OPINION OF THE COURT
Diane A. Lebedeff, J.
This proceeding was brought by the Attorney General, in the name of the People of the State of New York, pursuant to Executive Law § 63 (12) and article 22-B of the General Business Law, against respondents ELRAC, Inc., Snorac, Inc. and Enterprise Rent-A-Car Company, Inc., all doing business as Enterprise Rent-A-Car (ELRAC).
The parties ask the court to define the scope and extent of the duty to provide a legal defense for permitted users vehicles leased from ELRAC when a claim is made regarding a motor vehicle accident. ELRAC is a self-insurer and this issue arises as self-insured rental car companies and regulatory agencies *79 implement the April 3, 2001 decision of the Court of Appeals in ELRAC, Inc. v Ward (96 NY2d 58 [2001]), which held that a self-insured rental company must provide the statutory minimum liability coverage to “ ‘inure to the benefit? of any permissive user of the vehicle” (96 NY2d at 73), and a rental car company cannot seek indemnification from its lessee “where the damage falls below the minimum insurance that the rental company is required to provide” by Vehicle and Traffic Law § 370 (1) (96 NY2d at 69). As relevant to this decision, the Court of Appeals further noted that Vehicle and Traffic Law § 370 coverage, “of course, includes a duty to defend” (96 NY2d at 75 n 4 [citations omitted]).
All New York vehicles are subject to automobile liability coverage requirements which ELRAC satisfies, not by the purchase of insurance, but by being approved by the Commissioner of Motor Vehicles as a self-insurer under Vehicle and Traffic Law § 370 (3). Self-insurance, in general, is simply an assurance that the self-insurer has the financial means to pay any judgments against it (see, Guercio v Hertz Corp., 40 NY2d 680 [1976]), for a self-insurer is not an “ ‘insurer’ of anything other than [its] own ability to pay for damages for which [it] is legally responsible” (40 NY2d at 684). While this arrangement is sometimes confusingly called a “ ‘policy’ of self-insurance” (40 NY2d at 485), there is no actual insurance policy.
The self-insurance coverage amount is the legal minimum statutorily required personal injury liability coverage amount, including uninsured motorist coverage (Allstate Ins. Co. v Shaw, 52 NY2d 818, 820 [1980]). For a typical car with a seating capacity of seven or fewer passengers, such required coverage for personal injury is a minimum of $25,000 and a maximum of $50,000 and, for death, a minimum of $50,000 and a maximum of $100,000 (Vehicle and Traffic Law § 370 [1] [a]). Until recently, property damage coverage was not viewed as required and self-insured rental car companies could disclaim all liability for property damage (ELRAC, Inc. v Masara, 96 NY2d 847 [2001]); such self-insured companies now must provide property damage liability coverage up to $10,000 (L 2002, ch 20, eff Mar. 26, 2002, amdg Vehicle and Traffic Law § 370 [1] [b]). If a renter wishes coverage above the statutory limits, a renter may pay an optional daily charge and receive “supplemental liability protection,” often referred to as “SLP.” The impact of SLP or other insurance upon the obligation to provide a defense is not at issue here (see, as to such issues, generally, William T. Barker, Combining Insurance and *80 Self Insurance: Issues for Handling Claims, 61 Def Couns J 352 [1994]).
The typical “duty to defend” was crisply defined in Frontier Insulation Contrs. v Merchants Mut. Ins. Co. (91 NY2d 169, 175 [1997]) as follows: “If any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action.” (Citation omitted.) No reason is advanced here justifying a departure from this rule, under which it is expected that there is a duty to assign an attorney to defend the driver or permitted user, which attorney shall continue to defend the action through its conclusion.
This “duty to defend” cannot be terminated upon payment of a settlement or damages prior to the complete resolution of any litigation or claim, as ELRAC urges.[1] Indeed, it is the general New York rule that automobile insurers must pay all defense costs until a case ends (11 NYCRR 60.1 [b]) and that automobile insurers cannot be excused from providing a full defense by tendering the policy amount (Exchange Mut. Ins. Co. v Geiser, 130 Misc 2d 959 [Sup Ct, Albany County 1986, Hughes, J.]; Delaney v Paratransit, Inc., 132 Misc 2d 397 [Sup Ct, Schenectady County 1986, Kahn, J.]; see, collecting cases from various jurisdictions, J. Kraut, Annotation, Liability Insurer’s Duty to Defend Action Against an Insured after Insurer’s Full Performance of its Payment Obligations under Policy, 27 ALR3d 1057). Simply put, satisfaction by an insurer or self-insurer of the “duty to pay” is utterly separate from the satisfaction of the “duty to defend” (see, addressing separate nature of these duties, New York City Hous. Auth. v Commercial Union Ins. Co., 289 AD2d 311, 313 [2d Dept 2001] [“While the duty to defend is based on the allegations in the complaint, the duty to indemnify is based on whether the loss is covered by the policy”]; Servidone Constr. Corp. v Security Ins. Co., 64 NY2d 419, 424 [1985] [“the duty to pay is determined by the actual basis for the insured’s liability to a third person”]).
Finally, given that the availability of a defense through the conclusion of all litigation is seen as a part of the New York, automobile insurance obligation, the obligation to continue to *81 provide a defense is supported by the Court of Appeals’ observation that the self-insurance program is “in no way intended to decrease the insurance protection” otherwise available to drivers of rented automobiles (Allstate Ins. Co. v Shaw, supra, 52 NY2d at 820). This court concludes to permit a self-insurer to abandon the defense of its insured prior to completion of the litigation would violate New York’s “well-established proscription against permitting an insurer to place its own financial interests above those of its insured” (Ansonia Assoc. Ltd. Partnership v Public Serv. Mut. Ins. Co., 257 AD2d 84, 86 [1st Dept 1999]). The determination that there is no special and separate rule for self-insurers regarding the scope of the defense obligation is consistent with the American “majority view * * * that self insurers are under the same duty to defend their ‘insureds’ and to contribute to the defense costs * * * as exist for an insurance company” (1 Couch, Insurance 3d § 10:7 [1995]). For these reasons, the court concludes that the defense obligation of a New York self-insured car rental company extends through the conclusion of the case and cannot be eliminated by tendering to a claimant the part or all of the amount of available coverage.
Nonetheless, this court cannot go so far as to rule that ELRAC has an inescapable or unalterable duty to defend. The issue of termination or modification of a defense obligation by an insurer must be raised on a case-by-case basis in the forum before which the case or claim is pending and cannot be decided here on a global basis. There are two courses of action available'. The best recognized is an affirmative declaratory judgment action in which a self-insurer advances the position that there is no duty to defend in a particular instance (see, e.g., AIU Ins. Co. v ELRAC, Inc., 287 AD2d 668, 669 [2d Dept 2001] [self-insurer not required to defend or indemnify when unauthorized driver operating rented vehicle]).
Alternatively, a particular counsel may seek to be relieved from the obligation to represent a client by a motion made under CPLR 321 (b), which governs the withdrawal of an attorney from a matter.[2] As explained in the Practice Commentaries of Vincent C. Alexander:
*82 “[A]ri attorney may have good and sufficient reasons to seek withdrawal from representing the client. When a change of attorneys occurs during the course of an action, however, the judicial system’s interest in procedural regularity and fairness to other parties requires certainty as to the point in time at which a party’s change of counsel should be deemed effective. CPLR 321 (b) provides such certainty.
“When the change of counsel can be effected by agreement, the party and the outgoing attorney can simply file a jointly signed consent (with an acknowledgment by the client) with the clerk and serve notice of the change of attorney on the other parties. CPLR 321 (b)(1). If consent is lacking, judicial intervention is required for substitution of counsel. A motion must be made upon such notice as the court may direct, i.e., by order to show cause. The notice of motion must be given to the client of the outgoing attorney, the other parties and any other appropriate person as the court may direct.” (McKinney’s Cons Laws of NY, Book 7B, CPLR C321:2 [2001].)
While it is abundantly clear that a motion to withdraw as counsel is an inappropriate means to test an insurer’s obligation to defend (Laura Accessories v A.P.A. Warehouses, 140 AD2d 182 [1st Dept 1988] [counsel, assigned by insurer to represent insured, must file declaratory action to secure a finding of no coverage]; Rusolo v Skate Odyssey, 109 AD2d 875 [2d Dept 1985] [disclaimer based on insured’s alleged lack of cooperation not proper basis for a motion to withdraw]), two types of exceptions to this general rule have been recognized.
One exception exists if a court finds a conflict of interest between the insured and the insurer exists which forms a sound basis for a motion to withdraw (see, Torres v Bratcher, 35 AD2d 922 [1st Dept 1970] [attorney, for insurance company permitted to withdraw where policy cancelled for nonpayment of premiums, resulting in conflict of interest between obligation *83 of attorneys to insurer and to individual defendant]). It is difficult to envision such a conflict arising between a rental car company self-insurer and a permitted user of a leased vehicle. The essential nature of the relationship for the specific type of self-insurance involved here, which covers the car rental company as owner and all permitted users, is captured by the utilized label of “omnibus” coverage (1 Couch, Insurance 3d § 10:5). Both the car rental company and the permitted user stand on common ground, for there is no deductible nor policy exclusion which might pit their interests against each other and both desire to resolve litigation within the statutory coverage limits (compare, Pavia v State Farm Mut. Auto. Ins. Co., 82 NY2d 445, 452 [1993] [recognizing the more typical tension between a normal “insurer’s interest in minimizing its payments” and an “insured’s interest in avoiding liability beyond the policy limits”]). In the common situation of the car rental company’s liability being only derivative, the self-insurer gains nothing by an argument emphasizing the driver’s liability; the self-insuring car rental company has no “incentive to direct the defense in a manner designed to do anything other than minimize liability” (William T. Barker, Combining Insurance and Self Insurance: Issues for Handling Claims, supra, 61 Def Couns J at 355).
The second recognized ground for a motion to withdraw might arise when, in addition to the self-insurance, the lessee or driver has other insurance or indemnification arrangements (id.; see also, Jane Massey Draper, Annotation, Performance by One Insurer of Its Duty to Defend as Excusing Failure of Other Insurers Equally Obligated To Defend, 90 ALR3d 1199). In such an instance, if ELRAC were to tender the full amount which could be claimed under the available self-insurance coverage, the ELRAC assigned counsel might have grounds to move to be substituted by counsel assigned by another insurer or indemnitor (see, e.g., Duffy v County of Chautauqua, 247 AD2d 854 [4th Dept 1998] [where commercial liability policy limits exhausted and another insurer had undertaken defense, attorneys could withdraw]). As a practical matter, it seems unlikely that this situation will arise with any frequency. Documentation shows that the average claims made and/or paid by ELRAC rarely reach elevated levels. Taking the statistics ELRAC reported to the Department of Motor Vehicles in recent self-insurance program applications, for the approximately 17,000 ELRAC rental vehicles in New York, for 2000, ELRAC paid an average of $5,039.42 on 359 pure *84 personal injury claims, paid an average of $3,266.29 on 2,401 combined personal injury and property damage claims, and set aside reserves averaging $5,855.99 for each of the 743 pending pure personal injury claims; similarly, for 1999, ELRAC paid an average of $5,423.20 on 311 pure personal injury claims, paid an average of $3,876.62 on 1,142 combined personal injury and property damage claims, and set aside reserves averaging $7,121.66 for each of the 852 pending pure personal injury claims.
Because of these two exceptions, this court cannot rule that counsel assigned by ELRAC should be barred from moving for permission to withdraw. The proper course is to leave treatment of a motion to withdraw to the sound discretion of the forum in which each litigation or dispute is pending. Each individual presiding judge, or perhaps arbitrator, must balance the interests involved.
To draw to a close on the duty to defend, this court determines that ELRAC, as a self-insurer, must assign an attorney to provide a defense for users of its vehicles. The defense obligation may be terminated if either (1) a declaratory judgment determines there is no duty to defend, or (2) an order of an appropriate tribunal relieves the attorney assigned the litigation of the duty to represent such client.
As to the form in which this determination is to be embodied, both parties request a declaration sustaining their respective positions. The petition provides a basis for substantively similar injunctive relief because it is undisputed that, prior to the issuance of the decision in ELRAC, Inc. v Ward (supra), ELRAC regularly advised its renters and permitted users that it would not provide a legal defense if an accident ensued, which is now established to be improper advice as a matter of law. An injunction may issue pursuant to Executive Law § 63 (12), because even the voluntary cessation of unlawful activity does not obviate the need for, or the propriety of, an injunction (People v General Elec. Co., Sup Ct, NY County 2001, Index No. 400927; State of New York v Midland Equities of N.Y., 117 Misc 2d 203 [Sup Ct, NY County 1982]; Matter of State of New York v Hotel Waldorf-Astoria Corp., 67 Misc 2d 90 [Sup Ct, NY County 1971]). Similarly, under General Business Law § 349 (b), an injunction may be granted where a commercial misrepresentation clearly is made out by the papers before the court (People ex rel. Vacco v Appel, 258 AD2d 957 [4th Dept 1999]; Matter of State of New York v Daro Chartours, 72 AD2d 872 [3d Dept 1979]), even on proof which does “not *85 reach the level of common-law fraud” (Stutman v Chemical Bank, 95 NY2d 24, 29 [2000]). All other requests for relief in relation to the duty to provide a defense — including claims for restitution to consumers, penalties, and possible retroactive application of this ruling — are severed and deferred without a determination of liability at this time (see, similar severance, People v Alamo Rent A Car, 174 Misc 2d 501 [Sup Ct, NY County 1997, Crane, J.], following prior decision 162 Misc 2d 636 [Sup Ct, NY County 1994], affd 226 AD2d 294 [1st Dept 1996], affd 89 NY2d 560 [1997]).

. Under ELRAC’s scenario, if ELRAC tendered its maximum dollar coverage but the plaintiff or claimant demanded a still higher amount, ELRAC’s duty to defend would be satisfied and the driver or permitted user would thereafter be compelled to choose whether to proceed pro se, to secure and pay for substitute counsel to appear through the conclusion of the matter, or to cease participation and be held in default.

. CPLR 321 (b) provides as follows:
“(b) Change or withdrawal of attorney.
“1. Unless the party is a person specified in section 1201 [i.e., an infant, incompetent person or conservatee], an attorney of record may be changed by filing with the clerk a consent to the change signed by the retiring attorney and signed and acknowledged by the party. Notice of such change of attorney *82 shall be given to the attorneys for all parties in the action or, if a party appears without an attorney, to the party.
“2. An attorney of record may withdraw or be changed by order of the court in which the action is pending, upon motion on such notice to the client of the withdrawing attorney, to the attorneys of all other parties in the action or, if a party appears without an attorney, to the party, and to any other person, as the court may direct.”