OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Can ELRAC, a rental car company, enforce a standard clause in its rental agreements requiring the renter to indemnify it for any injuries caused to third parties by use of the rental car? We hold that ELRAC may not seek indemnification where the damage falls below the minimum insurance that the rental company is required to provide under section 370 (1) of the Vehicle and Traffic Law.
 

 ELRAC, doing business as Enterprise Rent-A-Car, is a self-insured company, having obtained a certificate of self-insurance pursuant to Vehicle and Traffic Law § 370 (3). In its application for the certificate of self-insurance, ELRAC averred, among other things, that its “self-insurance program will provide primary coverage at all times,” and that it “has, and will continue to have, the financial ability to respond to all payments of automobile claims and/or judgments arising out of ownership, maintenance, use or operation of [its] motor vehicles.” ELRAC’s rental agreements contain an indemnification clause, which requires the renter to “defend, indemnify and hold [the company] harmless from any claims, liabilities, costs and expenses arising from the renter’s use, operation or possession of the rented vehicle.” The agreements also state that ELRAC provides no bodily injury or property damage liability insurance, and that the renter’s own insurance applies instead.
 

 Each of the four cases before us involves a similar fact pattern. A person driving a car rented from ELRAC was involved in an accident, causing injury to a third party. The injured party sought damages from ELRAC — the owner of the car—
 
 *70
 
 pursuant to Vehicle and Traffic Law § 388, and ELRAC sought indemnification from the renter pursuant to the rental agreement. The particular facts of each case follow.
 

 ELRAC v Ward
 

 Defendant Gladys Ward rented a car from ELRAC and signed the standard indemnification clause. While driving the rental car, Ward collided with a vehicle owned by Gus Lerner. Lerner sought damages as a result of the accident, and ELRAC settled Lerner’s claim for $2,073.99. ELRAC then brought the present action seeking to collect the settlement amount from Ward under the indemnification clause. Supreme Court granted ELRAC’s motion for summary judgment, holding that it was entitled to indemnification under the rental agreement. The Appellate Division affirmed, stating that because ELRAC “seeks indemnification for sums it has actually paid to the third party, the policy underlying Vehicle and Traffic Law § 388 is not undercut by enforcement of the indemnification clause” (266 AD2d 500, 501).
 

 Ward v ELRAC
 

 Third-party defendant Leslie Seaton rented a car from ELRAC and signed the standard indemnification clause. While driven by Seaton’s son, Douglas Seaton, the car was involved in an accident, injuring plaintiff Tricia Ward. Ward brought suit against ELRAC and Douglas Seaton, and ELRAC brought a third-party action against Leslie Seaton, seeking indemnification. Supreme Court granted conditional summary judgment to ELRAC, concluding that Leslie Seaton was required under the rental agreement to indemnify ELRAC for the amount of any judgment and expenses incurred in defending the action. The Appellate Division affirmed, holding that ELRAC was entitled to contractual indemnification.
 
 [1]
 

 American Home Assurance Co. v ELRAC
 

 Carlos Medina, who was insured by plaintiff American Home Assurance Company, rented a car from ELRAC and signed the standard indemnification agreement. While driving the rental car, Medina was involved in an accident with a New York City
 
 *71
 
 fire truck. A passenger in the car, Nelson Gonzalez, commenced an action against ELRAC, Medina and the owner of the fire truck. American Home Assurance then brought the instant action seeking a declaratory judgment that it had no liability for the accident and that ELRAC had a duty to defend and indemnify Medina. ELRAC responded that it owed no such duty and that, under the indemnification clause, Medina had an obligation to indemnify ELRAC. Supreme Court granted ELRAC’s motion to dismiss American Home Assurance’s complaint, holding that Medina was contractually obligated to defend and indemnify ELRAC. The Appellate Division affirmed, stating that the indemnification clause was “valid and enforceable,” and that ELRAC had “no obligation to defend or provide primary insurance for the lessee of one of its vehicles” (273 AD2d 330, 330-331).
 

 ELRAC v American Home Assurance Co.
 

 Sergio Sabaris, who was insured by defendant American Home Assurance Company, rented a car from ELRAC and signed the standard indemnification clause. While driving the rental car, Sabaris was involved in an accident. The occupants of the other vehicle were Peter, Etheline and Sharon Warner. The Warners brought personal injury and property damage claims, which ELRAC settled for a total of $22,700 ($6,000 each for injuries to Etheline and Sharon; $8,000 for injuries to Peter; and $2,700 for property damage). ELRAC then brought the present action seeking indemnification from Sabaris under the rental agreement. ELRAC also sought a declaration that American Home Assurance was obligated to defend and indemnify Sabaris.
 

 Supreme Court held that the indemnification clause was unenforceable, stating that the rental company was required by law to provide primary insurance to the renter, and that “any attempt by the lessor to assert its right to contractual indemnification from the lessee after payment to a third party is an attempt to transfer the loss to its own insured and is barred by the antisubrogation rule.” The Appellate Division modified the judgment and held that Sabaris was required to indemnify ELRAC under the rental agreement. The Appellate Division stated that the indemnification clause was “valid and enforceable,” and that ELRAC “is not the primary insurer of the renter of its vehicle * * * and therefore, the antisubrogation rule does not apply” (273 AD2d 344, 345).
 

 We granted leave, and now reverse the Appellate Division orders in all four cases and remit to Supreme Court for ap
 
 *72
 
 plication of the proper legal standard to the particular facts of each case.
 

 Analysis
 

 The issue in these cases arises from the interplay of Vehicle and Traffic Law §§ 370 and 388 with the law of indemnification. Section 370 of the Vehicle and Traffic Law requires common carriers, including rental car companies, to obtain insurance or file a surety bond for their vehicles. Specifically, section 370 (1) requires every “person, firm, association or corporation engaged in the business of carrying or transporting passengers for hire” to file with the Commissioner of Motor Vehicles “a corporate surety bond or a policy of insurance * * * conditioned for payment of a minimum sum * * * on a judgment or judgments for damages.” This requirement applies to, among others, any “person, firm, association or corporation engaged in the business of renting or leasing rental vehicles” (Vehicle and Traffic Law § 370 [3]). For passenger cars seating not more than seven people, the minimum liability insurance mandated by the statute is $25,000 for bodily injury and $50,000 for death (Vehicle and Traffic Law § 370 [1] [a]); the statute specifies no minimum insurance requirement for property damage.
 
 [2]
 
 The bond or policy of insurance “shall inure to the benefit of any person legally operating the motor vehicle * * * in the business of the owner and with his permission, in the same manner and under the same conditions and to the same extent as to the owner” (Vehicle and Traffic Law § 370 [1] [b]).
 

 In lieu of filing a surety bond or insurance policy, rental car companies with 25 or more registered vehicles may seek permission from the Commissioner of Motor Vehicles to self-insure. To do so, the rental agency must satisfy the Commissioner that it “is possessed and will continue to be possessed of financial ability to respond to judgments obtained against such person, arising out of the ownership, maintenance, use or operation of any such person’s motor vehicle” (Vehicle and Traffic Law § 370 [3]).
 

 Section 388 of the Vehicle and Traffic Law states that the owner of a motor vehicle may be held civilly liable for any damage caused by the owner or any permissive user of the vehicle. Section 388 (1) states, “[e]very owner of a vehicle used or
 
 *73
 
 operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.” This provision, derived from section 59 of the Vehicle and Traffic Law of 1929 (as amended in 1934), altered the common-law rule that an owner of a vehicle was liable for injuries caused by its operation only if it was driven personally by the owner or his agent
 
 (see,
 
 Hertz Letter, Bill Jacket, L 1934, ch 491;
 
 see also, Potts v Pardee,
 
 220 NY 431, 434-435 [expressing common-law rule]). The purpose of section 388 is to “ensure access by injured persons to ‘a financially responsible insured person against whom to recover for injuries’ ”
 
 (Morris v Snappy Car Rental,
 
 84 NY2d 21, 27 [quoting
 
 Plath v Justus,
 
 28 NY2d 16, 20]).
 

 In the present cases, ELRAC, the owner of the automobiles, was liable to the injured third parties under section 388 (1). Answering the specific question before us, we hold that section 370, which requires rental agencies to obtain a minimum amount of insurance for its vehicles, prohibits ELRAC from seeking indemnification from its renters for amounts up to the minimum liability requirements.
 

 The language of section 370 is plain and precise. Common carriers, including rental car companies, are required to obtain insurance for their vehicles. For passenger cars, such as the ones rented here, the insurance must provide minimum liability coverage of $25,000 for bodily injury and $50,000 for death. Furthermore, the policy must
 
 “inure to the benefit”
 
 of any permissive user of the vehicle (Vehicle and Traffic Law § 370 [1] [b] [emphasis added]).
 
 [3]
 
 A renter is, of course, a permissive user. Thus, section 370 clearly requires the rental company to provide the renter with this minimum level of coverage.
 

 Morris v Snappy Car Rental
 
 provides additional support for our holding that ELRAC may not seek indemnification for amounts up to the minimum liability requirements. The primary issue before us in
 
 Morris,
 
 of course, was whether a rental company, by having its renters sign an indemnification clause, may “legally disclaim that portion of its liability which
 
 exceeds
 
 
 *74
 
 the amount for which motor vehicle owners are required to be insured under sections 388 and 370 of the Vehicle and Traffic Law” (84 NY2d, at 28 [emphasis added]). Answering that question, we held that an indemnification agreement for damages above and beyond the statutorily required insurance may be enforced, since section 388 of the Vehicle and Traffic Law was not “intended to go so far as to abrogate the right to indemnification”
 
 {id.,
 
 at 28).
 
 Morris
 
 noted, however, that a rental company could not, by an indemnification clause, circumvent its obligation to provide the minimum insurance required by the Vehicle and Traffic Law. Rather, we expressed approval for the Appellate Division’s holding that the renter was required to indemnify the rental company “only to the extent that [the company’s] liability exceeds its statutorily mandated liability coverage”
 
 (Morris v Snappy Car Rental,
 
 189 AD2d 115, 123), stating that the Appellate Division’s ruling was “unquestionably correct” (84 NY2d, at 27).
 

 We reject ELRAC’s argument that, because it is self-insured, it is not subject to the minimum liability insurance requirements. To be sure, self-insurance is different from insurance in that the self-insurer has assumed the risk of personally satisfying any tort judgments against it
 
 (see, Guercio v Hertz Corp.,
 
 40 NY2d 680, 684 [“By undertaking to assure payment of judgments, the owner does not become an ‘insurer’ of anything other than his own ability to pay for damages for which he is legally responsible”]). Here, however, we are called upon to determine the requirements placed on rental companies by section 370 of the Vehicle and Traffic Law. And it is well settled that section 370 imposes the same requirements on rental companies, regardless of whether they self-insure or purchase outside insurance.
 

 In
 
 Allstate Ins. Co. v Shaw
 
 (52 NY2d 818), this Court held that companies that self-insure under section 370 (3) must provide the same minimum coverage as companies that purchase insurance policies or post surety bonds under section 370 (1). Specifically, in
 
 Allstate,
 
 the Court held that a self-insured automobile leasing company was required to provide uninsured motorist coverage, which all motor vehicle liability insurance policies were required to provide under the Insurance Law. The Court stated that the provision in section 370 (3) permitting self-insurance was “in no way intended to decrease the insurance protection presently available”
 
 {id.,
 
 at 820). Indeed, the Court rejected the dissent’s argument that self-insurers were exempt from the minimum coverage require
 
 *75
 
 ments of section 370 (1), stating, were “the issue of minimum coverage before us, we cannot believe that such a strained and narrow interpretation of the statute would be upheld”
 
 (id.,
 
 at 821). Significantly, ELRAC itself acknowledged its duty to provide primary insurance for its rental cars, averring in its application for a certificate of self-insurance that it will “provide primary coverage at all times.”
 
 [4]
 

 Nor do we accept ELRAC’s argument that renters are not operating the vehicles “in the business of the owner” within the meaning of Vehicle and Traffic Law § 370 (1) (b).
 
 [5]
 
 ELRAC’s business is to rent cars, and customers who drive cars rented from ELRAC are operating the vehicles within the scope of that business. Indeed, ELRAC owns its fleet of cars for the very purpose of renting them to others. By subjecting rental car companies to the requirements of section 370, the Legislature obviously sought to ensure that rental cars — when operated by
 
 renters
 
 — were covered by a minimum amount of insurance. Otherwise there would be little purpose in including rental companies within the scope of the statute
 
 (see also, Mironov v New York Mut. Underwriters,
 
 147 AD2d 761 [driver of taxicab was operating vehicle in the business of the owner],
 
 lv denied 74
 
 NY2d 615;
 
 Fidelity & Cas. Co. v Russell,
 
 31 AD2d 4, 6-7 [same],
 
 affd
 
 26 NY2d 678).
 

 Finally, we address the renters’ argument that the antisubrogation rule precludes ELRAC from enforcing the indemnification clause. Subrogation is an equitable doctrine that “entitles an insurer to ‘stand in the shoes’ of its insured to seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse”
 
 (North Star Reins. Corp. v Continental Ins. Co.,
 
 82 NY2d 281, 294;
 
 see generally,
 
 16 Couch, Insurance 3d, ch 223). If, for example, an insured is driving a car and is hit and injured by another driver, the insured may file a claim with her insurer. The insurer then has the right, under the common law of subrogation, to “stand in the shoes” of the insured and seek
 
 *76
 
 recompense from the third-party tortfeasor for the amount paid to the insured, provided that the insured has been made whole
 
 (see, Winkelmann v Excelsior Ins. Co.,
 
 85 NY2d 577). This Court has long recognized an insurer’s equitable right to bring a subrogation action against a third party whose wrongdoing has caused a loss to its insured
 
 (see, Pennsylvania Gen. Ins. Co. v Austin Powder Co.,
 
 68 NY2d 465, 471;
 
 Ocean Acc. & Guar. Corp. v Hooker Electro-Chem. Co.,
 
 240 NY 37 [1925]).
 

 There is, however, an exception to the right of subrogation, termed the antisubrogation rule. Under that rule, an “insurer has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered * * * even where the insured has expressly agreed to indemnify the party from whom the insurer’s rights are derived”
 
 (Pennsylvania Gen. Ins. Co. v Austin Powder Co., supra,
 
 at 468;
 
 see also, Jefferson Ins. Co. v Travelers Indem. Co.,
 
 92 NY2d 363). In other words, an insurer may not step into the shoes of its insured to sue a third-party tortfeasor — if that third party also qualifies as an insured under the same policy — for damages arising from the same risk covered by the policy. This rule applies even if the third-party tortfeasor has expressly agreed to indemnify the insured for the loss. The purpose of this rule is to prevent an insurer from using the right of subrogation to avoid paying coverage that is due under the policy
 
 (see, Pennsylvania Gen. Ins. Co. v Austin Powder Co., supra,
 
 at 471). Additionally, the antisubrogation rule limits the instances in which an insurer and its insured have adverse interests, which might undercut an insurer’s incentive to provide a vigorous defense to its insured
 
 (see, id.,
 
 at 472).
 

 In
 
 Pennsylvania General,
 
 defendant Austin Powder rented a truck from Bison Ford and agreed to indemnify Bison for any liability incurred from the use of the vehicle. The rental agreement also required Bison to obtain primary insurance for the truck. The truck exploded while being used by Austin Powder. Bison’s insurer (Liberty Mutual) sought to subrogate itself to Bison’s rights and obtain indemnification from Austin Powder. This Court rejected the indemnification claim, holding that since Austin Powder qualified as an additional insured under the policy purchased by Bison, Liberty Mutual was seeking indemnification from its own insured, in violation of the antisubrogation rule
 
 (see,
 
 68 NY2d, at 471-473). Similarly, in
 
 Jefferson Ins. Co. v Travelers Indem. Co. (supra,
 
 92 NY2d 363), this Court held that an insurance company could not step into
 
 *77
 
 the shoes of its insured to seek indemnification against a permissive operator of a motor vehicle who had agreed to indemnify the owner, who was the named insured. The Court stated that for “the purposes of the anti-subrogation rule, there is simply no reason for treating a ‘permissive user,’ ” who also qualified as an insured under the policy, “differently than a named insured”
 
 {id.,
 
 at 374-375). Indeed, an insurer that provides coverage for permissive users “should not be surprised to pay claims that it covered”
 
 {id.,
 
 at 375).
 

 While the present cases do not involve subrogation— since ELRAC is not seeking to step into the shoes of its insureds to sue responsible third parties — the policy behind the antisubrogation rule also supports the result here. As in
 
 Pennsylvania General,
 
 allowing ELRAC to enforce the indemnification agreement for sums up to the statutory minimum coverage requirements would, in effect, permit the insurer “ ‘to pass the incidence of the loss * * * from itself to its own insured and thus avoid the coverage’ ” that it is obligated to provide
 
 (Pennsylvania Gen. Ins. Co. v Austin Powder Co., supra,
 
 at 471 [quoting
 
 Home Ins. Co. v Pinski Bros.,
 
 160 Mont 219, 225-227, 500 P2d 945, 949]). ELRAC must pay the coverage that it is statutorily bound to provide. Notably, here, if ELRAC had purchased an insurance policy, and its carrier had paid the claims, the antisubrogation rule would bar the carrier from stepping into ELRAC’s shoes and suing the renters to enforce the indemnification agreements for sums up to the statutory minimum required coverage.
 

 Contrary to ELRAC’s contention, self-insurers are not immune from antisubrogation principles
 
 (see, Lo Piano v Hunter,
 
 173 Ariz 172, 174-176, 840 P2d 1037, 1039-1041 [applying antisubrogation rule to self-insured trust fund];
 
 Group Hospitalization Med. Serv. v Smith,
 
 236 Va 228, 230-232, 372 SE2d 159, 160-161 [self-insured health plan was subject to antisubrogation statute]). By electing to self-insure under section 370, ELRAC undertook the obligation to provide primary insurance coverage for itself and its permissive users up to the statutory mínimums. With that, ELRAC undertook all the duties and responsibilities of an insurer. As noted, ELRAC may not, merely because it is a self-insurer, decrease the obligations that it owes to its insureds
 
 (see, Allstate Ins. Co. v Shaw, supra,
 
 52 NY2d, at 820).
 

 For amounts above the statutory mínimums, however, ELRAC may enforce the indemnification clause in its rental agreements. ELRAC is not statutorily bound to provide ad
 
 *78
 
 ditional coverage, nor did it voluntarily undertake any obligation to do so. Thus, there is no legal basis to void the indemnification agreement for amounts exceeding the mandatory mínimums. Indeed, to further “abrogate the right of indemnification” would disparage “the important countervailing right of freedom of contract”
 
 (Morris v Snappy Car Rental, supra,
 
 84 NY2d, at 28-29). Further, antisubrogation principles do not bar ELRAC from seeking indemnification for amounts exceeding the statutory limits
 
 (see, North Star Reins. Corp. v Continental Ins. Co., supra,
 
 82 NY2d, at 296 [antisubrogation rule did not apply where exclusions rendered policy inapplicable to the loss];
 
 Curran v City of New York,
 
 234 AD2d 254, 255 [holding that the antisubrogation rule applied only up to the policy limits of a liability policy]). Similarly, since section 370 specifies no minimum insurance requirement for property damage, ELRAC may seek indemnification from its renters for property damage awards to the extent otherwise legally permissible.
 

 In sum, Vehicle and Traffic Law § 370 requires rental car companies to provide primary insurance to their renters up to the minimum liability limits provided by the statute. Thus, the indemnification clause in ELRAC’s rental agreements, which seeks to disclaim that duty and assign the risk to the renters themselves, is unenforceable to that extent. The indemnification clause, however, if otherwise valid, is enforceable for amounts exceeding the statutory minimum liability requirements. We therefore remit all four cases to Supreme Court for determinations, under the proper legal standard, of the amounts, if any, for which ELRAC may seek indemnification in each case.
 

 Accordingly, in
 
 ELRAC v Ward
 
 and
 
 American Home Assur. Co. v ELRAC,
 
 the orders of the Appellate Division should be reversed, with costs, and the cases remitted to Supreme Court for further proceedings not inconsistent with this Opinion. In
 
 Ward v ELRAC
 
 and
 
 ELRAC v American Home Assur. Co.,
 
 the orders of the Appellate Division, insofar as appealed from, should be reversed, with costs, and the cases remitted to Supreme Court for further proceedings not inconsistent with this Opinion.
 

 Judges Smith, Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 In
 
 ELRAC v Ward:
 
 Order reversed, etc.
 

 In
 
 Ward v ELRAC:
 
 Order, insofar as appealed from, reversed, etc.
 

 
 *79
 
 In
 
 American Home Assur. Co. v ELRAC:
 
 Order reversed, etc. In
 
 ELRAC v American Home Assur. Co.:
 
 Order, insofar as appealed from, reversed, etc.
 

 [1]
 

 . While the case was on appeal to the Appellate Division, ELRAC settled the underlying personal injury action for $75,000. ELRAC contributed $50,000 toward the settlement, and Seaton contributed $25,000. ELRAC, however, reserved its right to contractual indemnification pursuant to Supreme Court’s order.
 

 [2]
 

 . The law requires that the bond or insurance policy have a maximum liability of $50,000 for bodily injury, $100,000 for death and $10,000 for property damage
 
 (see,
 
 Vehicle and Traffic Law § 370 [1] [a], [b]).
 

 [3]
 

 . Similarly, section 3420 (e) of the Insurance Law requires automobile insurance policies to cover not only the named insured but also “any person operating or using the [vehicle] with the permission, express or implied, of the named insured.”
 

 [4]
 

 . The primary coverage required by section 370, of course, includes a duty to defend (see,
 
 Agoado Realty Corp. v United Intl. Ins. Co.,
 
 95 NY2d 141, 145 [the “duty to defend arises whenever the allegations in the complaint against the insured fall within the risks covered by the insurance policy”];
 
 see also, ACP Servs. Corp. v St. Paul Fire & Mar. Ins. Co.,
 
 224 AD2d 961, 963 [rental company’s insurer had duty to defend driver of rental vehicle]).
 

 [5]
 

 . ELRAC does not argue that any other statutory language relieves it of the obligation to insure the renters up to the minimum liability limits.