■ LANCER INSURANCE COMPANY, Respondent, v REPUBLIC FRANKLIN INSURANCE COMPANY, Appellant, et al., Defendants. [759 NYS2d 734] —In an action, inter alia, for a judgment declaring that the defendant Republic Franklin Insurance Company is obligated to defend and indemnify Peter Massie, Rent-Me of Long Island, Inc., and Antoinette Peyton in an underlying personal injury action entitled *Powell v Massie,* pending in the Supreme Court, Suffolk County, under Index No. 2284/96, the defendant Republic Franklin Insurance Company appeals, as limited by its brief, from so much of an order of the Supreme Court, Nassau County (Davis, J.), dated July 31, 2001, as granted the plaintiff's motion for summary judgment. Justice Smith has been substituted for the late Justice O'Brien (*see* 22 NYCRR 670.1 [c]).

Ordered that the order is reversed insofar as appealed from, on the law, with costs, and the motion is denied.

On June 23, 1995, the defendant Peter Massie rented a 1986 Dodge Arias from Rent-Me of Long Island, Inc. (hereinafter Rent-Me), a franchise of the Rent-a-Wreck Company. Massie allegedly rented the Dodge because his own automobile, a 1994 Honda insured by the defendant Republic Franklin Insurance Company, was being repaired. Seven days later, on June 30, 1995, Massie left the rental car parked outside of the home of his friend Charlotte Clark. Massie left the keys to the rental car with Clark, in case she or members of her family needed to move it. Massie later telephoned Clark, and they discussed having Clark's niece, Antoinette Peyton, drive the rental car to the airport, where Peyton worked, because it would be more convenient for Massie to pick up the car from that location. On the following morning, Clark permitted Peyton to use the rental car. Peyton was driving her three young children to their babysitter in the rental car when she struck a pole. As a result of the collision, one of Peyton's children sustained serious injuries. An action to recover damages on behalf of the injured child was subsequently commenced against Massie, Peyton, and Rent-Me.

The plaintiff, Lancer Insurance Company (hereinafter Lancer), which insures Rent-Me, thereafter commenced this declaratory judgment action against, among others, Republic. Lancer alleged that since Massie had leased the 1986 Dodge from Rent-Me because his own vehicle was being repaired, the rental car was a "temporary substitute" vehicle for which Republic was required to provide coverage under the terms of its policy. Lancer demanded judgment declaring that the Republic policy issued to Massie provided primary coverage for the ac-

cident, and that Republic was therefor required to defend and indemnify Massie, Peyton, and Rent-Me in the underlying personal injury action.

Lancer subsequently moved for summary judgment, and Republic cross-moved for summary judgment in its favor. While the motion and cross motion were pending, the Court of Appeals decided *ELRAC, Inc. v Ward* (96 NY2d 58 [2001]). In that case, the Court of Appeals held that Vehicle and Traffic Law § 370 requires automobile rental companies to provide primary insurance to their renters up to the minimum liability limits provided by statute, and that this insurance coverage must inure to the benefit of any permissive user of the vehicle. The Court of Appeals further concluded in *ELRAC, Inc. v Ward* (*supra*) that an automobile rental company could not seek indemnification from a renter for damages which fall below the statutory minimum liability limits.

The Supreme Court granted Lancer's motion, and directed Republic to defend and indemnify Massie, Peyton, and Rent-Me for any amount up to its policy limits. In reaching its determination, the Supreme Court concluded, as a matter of law, that the insurance policy which Republic had issued to Massie for his Honda covered the rental car because it was being used as a "temporary substitute" while the Honda was being repaired. Although the Supreme Court acknowledged that Ward required automobile rental companies to provide primary insurance up to the minimum statutory limit, it held that Lancer had no such obligation because the rental agreement authorized only the lessee to operate the rental car, and thus, Peyton was not a permissive user. In support of this determination, the Supreme Court relied upon *ELRAC, Inc. v Masara* (96 NY2d 847 [2001]), in which the Court of Appeals held that a rental company could seek full indemnification for property damage settlements from the driver and lessee of a rental vehicle involved in an accident. The Court of Appeals reasoned in *Masara* that the insurance coverage mandated by Vehicle and Traffic Law § 370 did not inure to the benefit of the driver of the vehicle because, among other things, he was not authorized by the rental agreement to operate the vehicle which had been leased to his daughter.

On appeal, Republic contends that the Supreme Court erred in relying upon the *Masara* case to find that Peyton was not a permissive user of the rental car, and that Lancer, as the insurer of the car's owner, had an obligation to provide coverage for the accident. In support of its position, Republic contends that *Masara* was not intended to overrule established precedent holding that an automobile rental company's insurer

may not disclaim coverage for the negligence of a person operating the rental vehicle with the permission of the lessee, in violation of the rental agreement. We agree.

Vehicle and Traffic Law § 388 (1) makes every owner of a vehicle liable for injuries resulting from negligence "in the use or operation of such vehicle * * * by any person using or operating the same with the permission, express or implied, of such owner." In *Motor Veh. Acc. Indem. Corp. v Continental Natl. Am. Group Co.* (35 NY2d 260 [1974]), the Court of Appeals held that where the lessee of a rental vehicle permits another person to operate it, the rental company is deemed to have constructively consented to such use, even where the lessee violated the rental agreement by entrusting the rental car to another. The Court of Appeals recently reaffirmed this rationale in *Murdza v Zimmerman* (99 NY2d 375 [2003]), explaining that its finding of constructive consent in *Motor Veh. Acc. Indem. Corp. v Continental Natl. Am. Group Co. (supra)* "rested, in part, on the public policy concerns surrounding the large number of vehicles placed on the road by businesses that rent cars to others for profit, and the inevitability that these vehicles will 'become involved in their fair share of accidents'" (*Murdza v Zimmerman, supra* at 380, quoting *Motor Veh. Acc. Indem. Corp. v Continental Natl. Am. Group Co., supra* at 263). The Court of Appeals has also expressed concern that restricting a rental company's liability as owner of the vehicle to the negligence of authorized drivers only could leave an injured victim without the "recourse of a financially responsible defendant" contemplated by Vehicle and Traffic Law § 388, in violation of the public policy of this State (*Murdza v Zimmerman, supra*; *see Motor Veh. Acc. Indem. Corp. v Continental Natl. Am. Group Co., supra* at 264). Accordingly, the fact that Massie was the only individual expressly authorized to operate the rental car in the case at bar does not make Peyton a nonpermissive user as a matter of law.

Furthermore, the Supreme Court's reliance upon the *Masara* decision was misplaced. *Masara* involved a situation where a self-insured automobile rental company was seeking to require the lessee of its vehicle, and her father, who she had permitted to operate the vehicle, to indemnify it for property damage settlements. Notably, the *Masara* Court's decision that the rental company could seek full indemnification from the lessee and her father rested primarily upon the fact that Vehicle and Traffic Law § 370, which requires rental companies to obtain a minimum amount of coverage for bodily injury, does not specify a minimum insurance requirement for property damage.

*Masara* cannot be interpreted as supporting the proposition that a rental company's insurer has no obligation to provide coverage, in accordance with its policy, for personal injuries caused by the negligence of a third party driving the rental car with the permission of the lessee. To the extent that our decision in *AIU Ins. Co. v ELRAC, Inc.* (287 AD2d 668 [2001]) may support a contrary conclusion, it should not be followed.

We note, however, that the "linchpin" to a finding that a rental company has constructively consented to the use of its vehicle is "the third-party driver's permissive use vis-à-vis the lessee" (*Murdza v Zimmerman, supra* at 381). If the rental car is operated without the lessee's consent, "the third-party's operation would have been that of a thief—the antithesis of a permissive user" (*id.*). Thus, in order to find permissive use, there must be "a consensual link between the negligent operator and one whose possession of the vehicle is authorized" (*id.*). Although Vehicle and Traffic Law § 388 creates a strong presumption that the driver of a vehicle is operating it with the owner's consent, which can only be rebutted by substantial evidence (*see Murdza v Zimmerman, supra*; *Matter of Allstate Indem. Co. v Nelson,* 285 AD2d 545 [2001]; *Matter of General Acc. Ins. Co. v Bonefont,* 277 AD2d 379 [2000]; *Leonard v Karlewicz,* 215 AD2d 973 [1995]), the existence of permission and consent normally presents a question of fact for the jury (*see Matter of Allstate Indem. Co. v Nelson, supra*). Here, the record discloses an issue of fact as to whether Peyton was operating the rental car with the express or implied permission of Massie. Since the issue of whether Peyton was a permissive user cannot be determined as a matter of law, and neither insurance company would be required to provide coverage if Peyton operated the vehicle without Massie's consent, it would be premature to grant summary judgment to either insurer.

It also was premature for the Supreme Court to find, as a matter of law, that the rental car was being used as a "temporary substitute" vehicle under the policy issued by Republic to Massie. Republic's policy defines a temporary substitute vehicle as one which is being used while the insured vehicle "is out of normal use because of * * * repair." The purpose of such a provision is "to afford continuous coverage to the insured during the period that a vehicle scheduled under the policy is out of commission, and at the same time limit the risk to the insurer to one operating vehicle at a time for a single, fair premium" (*ELRAC, Inc. v Mehlinger,* 258 AD2d 500, 501-502 [1999]). Coverage for a substitute vehicle ceases when the insured vehicle is repaired and returned to its owner

(*see ELRAC, Inc. v Mehlinger, supra*). Since there is some indication in the record that Massie's Honda may have been repaired and returned to him prior to the accident, the issue of whether the rental car was a "temporary substitute" vehicle, entitling Rent-Me and Peyton to coverage under the Republic policy, must also await resolution at trial. However, we note that regardless of whether the vehicle was a "temporary substitute" for Massie's Honda, Republic correctly concedes that it is required to provide coverage to him under the provision of its policy which defines "insured" to include "you * * * for the ownership, maintenance or use of *any* auto" (emphasis supplied). Smith, J.P., Krausman, Townes and Rivera, JJ., concur.