OPINION OF THE COURT
Andrew M. Engel, J.
This is an action to recover no-fault first-party benefits allegedly provided by the plaintiff, to its assignor, on March 13, 2002 for injuries allegedly sustained in a motor vehicle accident on February 11, 2002. It is not disputed that at the time of the alleged accident the plaintiffs assignor was occupying a motor vehicle he had rented from “U-Haul.”[1]
The action was commenced by the filing of a summons and complaint on April 17, 2006. The plaintiff alleges, inter alia, that it provided health care services to its assignor on March 13, 2002, that it submitted a bill for those services to the defendant (hereinafter referred to as Republic Western) subsequent to March 13, 2002, and that the bill remains unpaid. Issue was joined by the service of Republic Western’s answer on or about June 1, 2007. Although Republic Western’s answer was more than one year overdue, the plaintiff never moved for the entry of a default judgment and accepted the late service of Republic Western’s answer. Republic Western’s answer contains 35 separate affirmative defenses. Many of these affirmative defenses are boilerplate and have no application to this action. They have no business being included in Republic Western’s answer. Nevertheless, Republic Western’s 35th affirmative defense alleges that the action is barred by the applicable statute of limitations. Based thereon, Republic Western now moves for an order, pursuant to CPLR 3211 (a) (5), dismissing the complaint. The plaintiff opposes the motion.
Republic Western avers that it does not have the NF-3 claim form filed with it by the plaintiff, although Republic Western does not deny its receipt. Using the date of service of March 13, 2002, and giving the plaintiff the benefit of all 180 days it then had to file its claim, plus the maximum of 30 days Republic *628 Western had to pay or deny this claim, Republic Western correctly asserts that the plaintiffs cause of action ripened no later than October 9, 2002.
Republic Western alleges that it and U-Haul are wholly owned subsidiaries of a Nevada corporation known as AMERCO. According to Republic Western, it “provides U-Haul with loss adjusting and claims handling through regional [sic] across North America” (Puckett affidavit, Aug. 20, 2007, It 7); and further it “does not issue a policy of insurance to the driver but rather covers U-haul for all claims against the self-insured.” (Puckett affidavit, Aug. 20, 2007, It 9.) Republic Western explains that “[w]hen a customer rents a U-Haul vehicle in New York State, Republic Western will insure the vehicle.” (Puckett affidavit, Aug. 20, 2007, It 9.) Based thereon, Republic Western declares that it is “the self-insurer for U-Haul” (Puckett affidavit, Aug. 20, 2007, 1f 7) and that its obligations to pay no-fault first-party benefits is imposed by statute or regulation. In this respect, Republic Western suggests that it is in the same position as the Motor Vehicle Accident Indemnification Corporation (hereinafter referred to as MVAIC), and is entitled to the application of the three-year statute of limitations provided in CPLR 214 (2).
Applying this three-year statute of limitations, Republic Western argues that the latest date by which the plaintiff could commence this action, and still be timely, was October 19, 2005. According to Republic Western, having been commenced on April 17, 2006, the plaintiffs action is time-barred and must be dismissed.
The plaintiff argues, in the first instance, that Republic Western has failed to demonstrate that it is a “self-insurer.” The plaintiff suggests that the status of Republic Western and U-Haul as wholly owned subsidiaries of AMERCO does not confer self-insured status upon Republic Western. The plaintiff further points to Republic Western’s acknowledgment that it “will insure[ ]” and “covers” (Puckett affidavit, Aug. 20, 2007, 1Í 9) U-Haul vehicles. The plaintiff further suggests that there is no legal basis upon which Republic Western can be, and it is impossible for it to be, a “self-insurer” for another.
The plaintiff alternatively argues, that even if Republic Western is found to be a self-insurer, its obligations to pay for no-fault first-party benefits is “firmly rooted in contract.” (Armao affirmation, Oct. 11, 2007, If 12.) Plaintiff argues that unlike MVAIC, whose obligations are strictly imposed by statute, *629 Republic Western voluntarily chose to be a self-insurer, obligating itself to provide no-fault first-party benefits by virtue of Insurance Law § 5103 and the rental agreement between plaintiffs assignor and U-Haul. Under all of these circumstances, according to the plaintiff, it is entitled to the application of the six-year statute of limitations provided for by CPLR 213 (2); and, Republic Western cannot receive the benefit of a shorter statute of limitations merely because it does not issue a written insurance policy.
In reply, contradicting its earlier statements, Republic Western alleges that “U-Haul provides the funding for losses regarding its vehicles — including the no fault benefits in question.” (Federici affirmation, Nov. 26, 2007, H 4.) Reemphasizing its relationship with U-Haul and AMERCO, Republic Western notes that no insurance is sought from outside companies and that the three corporations should collectively be viewed as a single self-insured entity. Republic Western posits that the question before the court is “whether the liability [to pay first-party benefits] would not exist but for a statute.” (Federici affirmation, Nov. 26, 2007, 1Í 6.) Republic Western answers this question by arguing that unlike “[traditional automobile insurance companies” (Federici affirmation, Nov. 26, 2007, H 6) which issue policies of insurance, Republic Western is self-insured and “do[es] not issue policies containing the no-fault endorsement, and would not owe no-fault benefits but for Regulation 68.” (Federici affirmation, Nov. 26, 2007, 1! 6.) This court does not agree.
Although claiming to be self-insured, Republic Western has failed to offer any competent proof supporting this claim. In fact, Republic Western’s proof appears to be to the contrary. At the outset, it is noted that Republic Western’s answer fails to deny, and therefore admits, the allegation contained in paragraph “1” of the plaintiffs complaint, which alleges: “Defendant is an insurance company licensed to do business in the State of New York.” The court also agrees with the plaintiff that there is neither legal authority for, nor any logic to, Republic Western’s claim that it is actually the “self-insurer” of a separate legal entity.
Similarly, the business relationship among the corporate entities, Republic Western, U-Haul and AMERCO, does not establish Republic Western as a self-insurer. In fact, the affidavit of Sharon Puckett, Republic Western’s claims representative, and the AMERCO 10Q report upon which Republic Western relies, *630 do more to establish Republic Western as an insurer than a self-insurer. As previously noted, Ms. Puckett advises this court that “[w]hen a customer rents a U-Haul vehicle in New York State, Republic Western will insure the vehicle.” (Puckett affidavit, Aug. 20, 2007, H 9.) She similarly advises that Republic Western “covers U-Haul.” (Puckett affidavit, Aug. 20, 2007, 11 9.) Verifying that Ms. Puckett’s use of the words “insure” and “covers” were not used in error, the AMERCO 10Q report submitted by Republic Western advises that “Rep West is focused on providing and administering property and casualty insurance to U-Haul, its customers, its independent dealers and affiliate[s].” (AMERCO 10Q report at 51); “Rep West also underwrites components of the Safemove, Safetow and Safestor protection packages to U-Haul customers. We continue to focus on increasing the penetration of these products. The business plan for Rep West includes offering property and casualty products in other U-Haul related programs” (AMERCO 10Q report at 53); “Premiums at Rep West increased $0.6 million due to increases in U-Haul related business” (AMERCO 10Q report at 59); and, “Premium revenues [for Republic Western] were $5.4 million and $4.8 million for the quarters ended March 31, 2006 and 2005, respectively. U-Haul related premiums were $4.5 million and $3.9 million for the quarters ended March 31, 2005 and 2004, respectively.” (AMERCO 10Q report at 67.)
That Republic Western’s claim to be a self-insurer is erroneous at best, and less than forthright at worst, is evidenced by the representations made by Republic Western in other litigation involving its status as an insurer. In Republic W. Ins. Co. v State (985 SW2d 698 [Tex Ct App, Austin 1999]) Republic Western and U-Haul brought an action seeking a declaration that they were not engaging in the unauthorized business of insurance. The State of Texas sought injunctive relief, restraining such insurance activities. In finding against Republic Western and U-Haul the Texas Court of Appeals noted, “U-Haul offers its rental customers three ‘Safe Protection’ insurance packages” (at 699) and “solicit[s] rental customers to purchase insurance and collect [s] premiums for Republic Western” (at 702). Regarding Republic Western’s activities, the court observed, “Republic Western . . . assist[s] U-Haul in the solicitation and effectuation of insurance, in the dissemination of coverage and rate information, and in the delivery of insurance contracts” (id.).
Like the matter sub judice, NYC Med. & Neurodiagnostic, P.C. v Republic W. Ins. Co. (8 Misc 3d 33 [App Term, 2d & 11th *631 Jud Dists 2004]) was an action involving a claim for no-fault first-party benefits, where the court noted (at 34), “Plaintiffs assignor was a passenger in a U-Haul vehicle insured by [Republic Western], an Arizona corporation.” In that action, Republic Western’s “New York claims manager submitted an affidavit in which he averred that [Republic Western] was an Arizona corporation . . . , that [Republic Western] was the sole insurer for U-Haul, Inc., an Arizona corporation, and that the policy was written and sold in Arizona” (at 35).
After reviewing, inter alia, an insurance policy between U-Haul and AMERCO and an insurance identification card, the court found:
“A business automobile insurance policy had been issued by [Republic Western], an Arizona corporation, to its named insured, Amerco, also an Arizona corporation, indicating that there was a New York specific endorsement providing no-fault coverage. The Arizona automobile insurance card for the vehicle showed that [Republic Western] was its insurer and that the insured was ‘Amerco et al, including U-Haul’ ” (id.).
Diagnostic Rehab. Medicine Serv. v Republic W. Ins., Co. (2003 NY Slip Op 51458[U] [Civ Ct, Kings County 2003]) consolidated six actions to recover no-fault first-party benefits. Once again, Republic Western’s New York claims manager represented to the court “that Republic Western is an Arizona corporation and ‘is the sole insurer for U-HAUL INC., an Arizona Corporation’ ” (at *8). Quoting from N.Y.C. Med. & Neurodiagnostic, P.C. v Republic W. Ins. Co. (2003 NY Slip Op 51070[U], *4 [2003]), and consistent with some of the representations made by Republic Western in the present matter, the court found (2003 NY Slip Op 51458[U], *10):
“At least one equipment rental contract delivered to a renter from a U-Haul facility in the city of New York stated under the heading ‘liability insurance’ that U-Haul customers ‘are insured by a business auto policy, providing limits up to the minimum financial responsibility law of the state where the accident occurs[;]’ ” and, even more to the point, “ ‘Under the terms of the insurance policy issued to U-Haul, [Republic Western] has agreed to provide no-fault benefits to any person injured in U-Haul’s vehicles . . . ”
Based upon all of the foregoing, even if this court were to accept Republic Western’s underlying premise, that self-insurers *632 are to be held to the three-year statute of limitations provided for.by CPLR 214 (2), Republic Western has failed to adequately demonstrate that it is a self-insurer. For this reason alone Republic Western’s motion should be denied. This failure of proof notwithstanding, it is the opinion of this court that even as a self-insurer, Republic Western would be bound by the six-year statute of limitations provided for by CPLR 213 (2).
Accepting for the sake of argument that Republic Western has adequately demonstrated its status as a self-insurer, Republic Western relies upon two lower court decisions, one reported, Alleviation Supplies Inc. v Enterprise Rent-A-Car (12 Misc 3d 787 [Civ Ct, Richmond County 2006]) and one unreported, AL Med. & Surgical Supplies, Inc. v Republic W. Ins. Co. (Civ Ct, Bronx County, Index No. 48145/06, 2007), to support its statute of limitations argument. Recognizing the application of a six-year statute of limitations in actions seeking to recover no-fault first-party benefits owed under a policy of insurance, the court in Alleviation Supplies Inc. v Enterprise Rent-A-Car (at 791) held, “there is no logical reason to view an action against a self-insurer as a breach of contract action, in that the self-insurer’s liability derives solely from statute and regulations promulgated pursuant to statute.” The court in AL Med. & Surgical Supplies, Inc. v Republic W. Ins. Co. (supra) reached the same conclusion. This court respectfully disagrees. This court is not bound by either of the decisions relied upon by Republic Western; and, for the reasons set forth at length below, respectfully declines to follow them.
As indicated at the outset of this decision, the plaintiff seeks the recovery of no-fault first-party benefits for medical services allegedly provided to its assignor who was allegedly injured while occupying a vehicle he had leased from U-Haul. There is likewise no dispute that there was a contract between the plaintiffs assignor, as lessee, and U-Haul, as owner/lessor. As will be discussed, by virtue of this rental agreement the self-insured owner/lessor stands in the same shoes as a third-party insurer with regard to its obligations to provide no-fault first-party benefits. Liability is not imposed simply by virtue , of the owner/lessors’ status as a self-insurer, but “because of the terms of self-insurance that it agreed to in its rental agreement” (Guercio v Hertz Corp., 40 NY2d 680, 684 [1976]). Contrary to the argument of Republic Western, self-insurers are not analogous to MVAIC.
As noted in Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co. (89 NY2d 214, 221 [1996]), “MVAIC itself is a *633 statutory creation . . . .” If not for Insurance Law article 52 MVAIC would not exist. As Insurance Law § 5201 (b) makes clear, MVAIC was created by the legislature due to its belief that
“the motor vehicle financial security act in the vehicle and traffic law . . . fails to accomplish its full purpose of securing innocent victims of motor vehicle accidents recompense for the injury and financial loss inflicted upon them, in that the act makes no provision for the payment of loss on account of injury to or death of persons who, through no fault of their own, were involved in motor vehicle accidents caused by [uninsured vehicles, unidentified vehicles which leave the scene, stolen vehicles, vehicles operated without the owner’s permission, insured motor vehicles where the insurer disclaims coverage and unregistered vehicles].”
In contrast, self-insurers, while statutorily permitted to exist, are not created by statute. Self-insured vehicle owners/lessors, in an effort to comply with the Motor Vehicle Financial Security Act, voluntarily assume the obligations imposed upon all insurers by assuring payment of benefits and judgments which may be due thereunder. (See ELRAC, Inc. v Ward, 96 NY2d 58 [2001]; Nassau Ins. Co. v Guarascio, 82 AD2d 505 [2d Dept 1981].) “By electing to be self-insured, [they] stand[ ] in the same position as any other insurer under the No-Fault Law.” (Matter of State Ins. Fund [State of New York], 212 AD2d 98, 101 [4th Dept 1995] [citation omitted]; see also Matter of McKenna v County of Nassau, Off. of County Attorney, 61 NY2d 739 [1984].) A review of the statutory and regulatory enactments obligating motor vehicle owners to maintain automobile insurance demonstrates that these obligations imposed upon self-insurers are no different than the obligations and policy endorsements imposed upon insurance companies, and should be treated the same.
The maintenance of motor vehicle insurance is compulsory in New York State. Vehicle and Traffic Law article 6, known as the Motor Vehicle Financial Security Act, provides:
“The legislature is concerned over the rising toll of motor vehicle accidents and the suffering and loss thereby inflicted. The legislature determines that it is a matter of grave concern that motorists shall be financially able to respond in damages for their negligent acts, so that innocent victims of motor ve *634 hide acddents may be recompensed for the injury and financial loss inflicted upon them. The legislature finds and declares that the public interest can best be served in satisfying the insurance requirements of this article by private enterprise operating in a competitive market to provide proof of financial security through the methods prescribed herein” (Vehicle and Traffic Law § 310 [2]).
“Both statute and public policy require that motorists be insured against the risks of automobile travel” (General Acc. Ins. Group v Cirucci, 46 NY2d 862, 864 [1979] [citations omitted]). Simply stated, “[t]he whole object of compulsory automobile insurance is to assure the protection of members of the public, who are innocent victims of motor vehicle accidents, by providing compensation for and protection from tortious wrongs committed against them” (Rosado v Eveready Ins. Co., 34 NY2d 43, 47 [1974]).
While Vehicle and Traffic Law § 321 (1) provides that article 6 “shall not apply to any motor vehicle for the operation of which security is required to be furnished under section three hundred seventy of this chapter,” e.g., lessors, Vehicle and Traffic Law § 370 (1) mandates:
“Every person, firm, association or corporation engaged in the business of carrying or transporting passengers for hire . . . except . . . motor vehicles . . . owned and operated by a municipality,. . . shall file with the commissioner of motor vehicles . . . a corporate surety bond or a policy of insurance, . . . conditioned for the payment of a minimum sum, hereinafter called minimum liability . . . .”
These same obligations are placed upon those engaged in the business of renting or leasing vehicles to be operated upon the public roadways by virtue of Vehicle and Traffic Law § 370 (3). (See ELRAC, Inc. v Ward, supra; Matter of Allstate Ins. Co. v Shaw, 52 NY2d 818 [1980].)
In lieu of providing a surety bond or policy of insurance, an entity “engaged in the business of renting or leasing motor vehicles, having registered in this state more than twenty-five motor vehicles subject to the provisions of this section and who qualifies . . . , may file a certificate of self-insurance.” (Vehicle and Traffic Law § 370 [3]; ELRAC, Inc. v Ward, supra.) An out-of-state self-insurer, who does not meet this criteria may, nevertheless, provide proof of qualifications “under self-insurance *635 provisions of the laws of the jurisdiction of such non-resident.” (Vehicle and Traffic Law § 311 [3]; Matter of Purex Indus. v Nationwide Mut. Ins. Co., 110 AD2d 67 [2d Dept 1985].)[2] Whether coverage is provided by a surety bond, a policy of insurance or a self-insurer, the coverage extends to one operating the vehicle with the vehicle owner’s permission. (ELRAC, Inc. v Ward, supra; Insurance Law § 3420 [e]; § 5103.)
While rental vehicles are excluded from article 6 of the Vehicle and Traffic Law, section 321 (2) thereof nevertheless provides “that any motor vehicle exempted in subdivision one of this section from the provisions of any portion of this article shall be subject to the provisions of article fifty-one of the insurance law.” Article 51 of the Insurance Law, known as the “Comprehensive Motor Vehicle Reparations Act,” is colloquially known as “the no-fault law.”
Insurance Law § 5103 (a) provides, in pertinent part:
“Every owner’s policy of liability insurance issued on a motor vehicle in satisfaction of the requirements of article six or eight of the vehicle and traffic law shall also provide for; every owner who maintains another form of financial security on a motor vehicle in satisfaction of the requirements of such articles shall be liable for; and every owner of a motor vehicle required to be subject to the provisions of this article by subdivision two of section three hundred twenty-one of the vehicle and traffic law shall be liable for; the payment of first-party benefits to: (1) Persons, other than occupants of another motor vehicle or a motorcycle, for loss arising out of the use or operation in this state of such motor vehicle.”
As can be seen, no-fault coverage is part and parcel of the liability coverage provided, whether by surety bond, policy of insurance or self-insurance. (Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274 [1997]; Keith v Liberty Mut. Fire Ins. Co., 118 AD2d 151 [2d Dept 1986].)
Further imposing these obligations on all forms of motor vehicle financial security, Insurance Law § 5103 (d) provides:
“Insurance policy forms for insurance to satisfy the requirements of subsection (a) hereof shall be subject to approval pursuant to article twenty-three of this chapter. Minimum benefit standards for such *636 policies and for self-insurers, and rights of subrogation, examination and other such matters, shall be established by regulation pursuant to section three hundred one of this chapter.”
Similarly, Insurance Department Regulation 68, codified at 11 NYCRR part 65, implements the no-fault law. (Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854 [2003].) Among its provisions, relevant herein, Regulation 68 provides, “Every owner’s policy of liability insurance issued in satisfaction of the minimum requirements of article 6 or 8 of the Vehicle and Traffic Law and article 51 of the Insurance Law shall contain provisions providing minimum first-party benefits . . . .” (11 NYCRR 65-1.1 [a].) Self-insurer is defined by 11 NYCRR 65-2.1 (a) as “any person, firm, association or corporation that:
“(1) maintains a form of financial security other than an owner’s automobile insurance policy in satisfaction of article 6 or 8 of the New York Vehicle and Traffic Law; or
“(2) is subject to article 51 of the New York Insurance Law as provided for in section 321 of the New York Vehicle and Traffic Law.”
11 NYCRR 65-2.2 (a) provides,
“In accordance with the provisions of article 51 of the New York Insurance Law and this Part, a self-insurer shall pay first-party benefits to reimburse for basic economic loss sustained by an eligible injured person on account of personal injuries caused by an accident arising out of the use or operation of a motor vehicle within the United States of America, its territories or possessions, or Canada.”
11 NYCRR 65-2.2 (j) (3) defines an eligible injured person, in pertinent part, as “any other person who sustains personal injury arising out of the use or operation of the self-insured motor vehicle in the State of New York while not occupying another motor vehicle.” The rules for the settlement of claims for first-party benefits shall apply to insurers and self-insurers alike. (11 NYCRR 65-3.1.)
As is apparent from the foregoing, to suggest that motor vehicle ownersAessors, who choose to operate as self-insurers, should benefit from the shorter statute of limitations provided by CPLR 214 (2), for “liability . . . created or imposed by statute except as provided in sections 213 and 215,” because they do not physically issue a policy of insurance or a no-fault endorsement, *637 overlooks the fact that the very same obligations are imposed upon insurance companies by mandating that their policies contain such endorsements. (Insurance Law § 5103 [a]; 11 NYCRR 65-1.1 [a].) Moreover, Insurance Law § 5103 (h) provides that “[a]ny policy of insurance obtained to satisfy the financial security requirements of article six or eight of the vehicle and traffic law which does not contain provisions complying with the requirements of this article [article 51], shall be construed as if such provisions were embodied therein.”
As recently recognized in Mandarino v Travelers Prop. Cas. Ins. Co. (37 AD3d 775, 776 [2d Dept 2007]),
“the inclusion of terms in an insurance contract, which might be mandated by various statutes or regulations, does not necessarily alter the fundamentally contractual nature of the dispute between the insured (or his or her assignee), on the one hand, and his or her ‘no fault’ insurer, on the other hand.”
In such circumstance, this liability is no less created or imposed upon one issuing a policy of insurance than it is upon a self-insurer who contracts for the leasing of its vehicle, which carries with it the assurance of its financial ability to satisfy the Motor Vehicle Financial Security Act and to pay judgments and claims. (See Guercio v Hertz Corp., supra; ELRAC, Inc. v Ward, supra; Nassau Ins. Co. v Guarascio, supra.) The court can see no logical reason why an insurer who contracts for the mandated coverage should be subjected to a six-year statute of limitations, while a self-insured owner/lessor who contracts for the lease of its vehicle, may limit its liability to those actions commenced within three years of their accrual. The logical extension of such a holding would be to encourage insurance companies to refrain from issuing policies of insurance or excluding no-fault endorsements therefrom, allowing them to argue that their obligations are imposed by statute alone, reducing their exposure, in contravention of the statutory and regulatory scheme.
This, in fact, was the same position recently taken by the Appellate Division, Second Department, in Matter of ELRAC Inc., v Suero (38 AD3d 544 [2d Dept 2007]). While that case involved a proceeding to recover “uninsured motorist” benefits from the self-insured rental company, rather than no-fault first-party benefits, the statutory and regulatory schemes enacting and implementing the two endorsements are the same; and, the court’s reasoning for applying a six-year statute of limitations, as opposed to a three-year statute of limitations, to a self-insurer is indistinguishable.
*638 In the same way that Insurance Law § 5103 (a) requires the inclusion of no-fault first-party benefits in all forms of motor vehicle financial security, Insurance Law § 3420 (f) (1) requires the inclusion of “uninsured motorist” coverage. Just as Insurance Law § 5103 (h) will read a no-fault endorsement into a policy of insurance which has omitted same, so too will Insurance Law § 3420 (f) (1) read in an “uninsured motorist” endorsement which has been omitted. “Uninsured motorist” coverage, like no-fault coverage, will apply regardless of whether liability coverage is provided by a surety bond, an insurance policy or a self-insurer. (Vehicle and Traffic Law § 321 [2]; § 370; Matter of Manhattan & Bronx Surface Tr. Operating Auth. v Evans, 95 AD2d 470 [2d Dept 1983]; Matter of New York City Tr. Auth. [Thom], 52 NY2d 1032 [1981].) The right to obtain such mandated coverage “from a self-insurer is no less than the corresponding right under a policy issued by an insurer.” (Matter of Country-Wide Ins. Co. [Manning], 96 AD2d 471, 472 [1st Dept 1983], affd 62 NY2d 748 [1984] [citations omitted].)
Given the statutory and regulatory provisions providing for the inclusion of “uninsured motorist” coverage in all forms of motor vehicle financial security, it has been well recognized that “[a]lthough the endorsement is required by the Insurance Law, the obligation of the insurance company is contractual rather than statutory in nature.” (State Farm Mut. Auto. Ins. Co. v Basile, 48 AD2d 868 [2d Dept 1975]; Matter of St. Paul Fire & Mar. Ins. Co. [Vanguard Sys. Resources], 152 AD2d 497 [1st Dept 1989]; Matter of Manhattan & Bronx Surface Tr. Operating Auth. v Evans, supra.) Applying this same reasoning in ELRAC Inc. v Suero (at 545), the Court held that a self-insured car rental company will be subject to the six-year statute of limitations, noting,
“From an injured claimant’s perspective, ‘[t]he right to obtain uninsured motorist protection from a self-insurer is no less than the corresponding right under a policy issued by an insurer’ (Matter of Country-Wide Ins. Co. [Manning], 96 AD2d 471, 472 [1983], affd 62 NY2d 748 [1984]; see Matter of Allstate Ins. Co. v Shaw, 52 NY2d 818, 820 [1980]).”
For all of the reasons set forth hereinabove, this court can see no logical reason why the same is not true for no-fault benefits provided by a self-insured rental company.
*639 Accordingly, it is the holding of this court that a claim for no-fault first-party benefits against a self-insured motor vehicle rental company will be subject to the six-year statute of limitations provided by CPLR 213 (2), and the motion of Republic Western to dismiss this action as untimely is denied.

. Defendant identifies the leasing company as “U-Haul International, Inc.”

. Republic Western has not offered any proof of having done so herein.