Second Child v Edge Auto, Inc.

2026 NY Slip Op 02436

April 23, 2026

Court of Appeals

Singas, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

Second Child et al., Appellants,

v

Edge Auto, Inc. et al., Respondents.

Decided on April 23, 2026

No. 30

Walter D. Santiago, Jr., for appellants.

Eric D. Mercurio, for respondents.

Hon. Letitia James, New York State Attorney General, American Financial Services Association, Allstate Fire and Casualty Insurance Company et al., American Car Rental Association et al., amici curiae.

Singas, J.

[*1]

The Graves Amendment (49 USC § 30106) plainly shields rental car companies from vicarious liability for damages caused solely by their customer's negligent use of a rental vehicle. This appeal concerns whether that federal statute preempts Vehicle and Traffic Law § 370's primary insurance requirement (see ELRAC, Inc. v Ward, 96 NY2d 58, 78 [2001]). We hold that section 370, insofar as we have interpreted it to require such companies to provide primary liability insurance coverage to renters (see id.), does not fall within the Graves Amendment's savings clause and is preempted, but that section 370's requirement that rental car companies carry a specified minimum amount of insurance is not preempted. We thus affirm the Appellate Division order.

I.

Vehicle and Traffic Law § 370 requires rental car companies to carry liability insurance covering every vehicle they own. Such companies must meet minimum insurance standards for claims arising from [*2]bodily injury ($25,000 minimum) and property damage ($10,000 minimum) (see Vehicle and Traffic Law § 370 [1]).FN1 The statute provides that the insurance policy "shall inure to the benefit of" the driver if the driver is operating the vehicle with the owner's permission (id.). Separately, but relatedly, Vehicle and Traffic Law § 388 further provides that a vehicle's owner "shall be liable and responsible" for any damages resulting from the vehicle's use if the driver had the owner's permission to operate the vehicle (id. § 388 [1]).FN2

In ELRAC, Inc. v Ward, we addressed "the interplay of Vehicle and Traffic Law §§ 370 and 388 with the law of indemnification" (96 NY2d at 72). We began our analysis in Ward by acknowledging that the rental company was vicariously liable to injured third parties under section 388 (see id. at 73). The question before us was whether section 370 prohibited the company from seeking indemnification from the renter for that vicarious liability for amounts up to the statutory minimum (see id.). We held that car rental companies were required to provide "primary insurance to their renters up to the minimum liability limits provided by the statute" (id. at 78). We reasoned that section 370 "clearly requires the rental company to provide" such coverage because section 370 required that the subject policy "inure to the benefit" of the driver (id. at 73, quoting Vehicle and Traffic Law § 370 [1] [b]). We further explained that such insurance must be primary, meaning it must cover any losses up to the statute's minimum threshold, making the driver and their personal insurer responsible only for losses in excess of that minimum (see id. at 78; see also Black's Law Dictionary [12th ed 2024], insurance). We reasoned that because the legislature imposed vicarious liability on rental companies for their renters' actions under section 388 and imposed minimum insurance requirements for such liability under section 370, rental companies were required to insure against that liability and indemnify a renter's damages up to the statutory minimum levels (see Ward, 96 NY2d at 72-73, 77-78). Had the rental company in Ward not been statutorily liable to injured third parties under section 388, the question of which party's insurance would cover that liability never would have arisen.

In 2005, after we decided Ward, Congress enacted the Graves Amendment to combat rising costs and lawsuits in New York and other states that imposed vicarious liability on car rental companies (see 151 Cong Rec 4096, at 4096 [Mar. 9, 2005] [explaining that such lawsuits "cost consumers nationwide over $100 million annually," and higher insurance costs "dr(ove) many small companies out of business"]). At the time, New York was one of only three states that imposed unlimited vicarious liability on rental companies for the negligence of renters (see Susan Lorde Martin, Commerce Clause Jurisprudence and the Graves Amendment: Implications for the Vicarious Liability of Car Leasing Companies, 18 U Fla JL & Pub Poly 153, 157 [2007]). These unlimited vicarious liability schemes, including New York's specifically, motivated Congress to pass the Graves Amendment (see 151 Cong Rec 4096, 4099 [Mar. 9, 2005] [statement of Representative Graves that in states "such as New York, (the rental company is) liable, unlimited liability, just because they own the car. That is not right"]).

The Graves Amendment "prohibits imposition of vicarious liability on [car rental companies] for injuries resulting from the negligent use or operation of the [rented] vehicle" (Jones v Bill, 10 NY3d 550, 553 [2008]). Its preemption clause states:

"An owner of a motor vehicle that rents or leases the vehicle to a person . . . shall not be liable under the law of any State . . . by reason of being the owner of the vehicle . . . for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—

"(1) the owner . . . is engaged in the trade or business of renting or leasing motor vehicles; and

"(2) there is no negligence or criminal wrongdoing on the part of the owner" (49 USC § 30106 [a]).

The Graves Amendment also contains a savings clause that limits its preemptive effect:

"Nothing in this section supersedes the law of any State . . . —

"(1) imposing financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle; or

"(2) imposing liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law" (id. § 30106 [b]).

II.

In 2019, plaintiff Second Child rented a truck from defendant, Edge Auto, Inc. In the operative rental agreement, Edge Auto required Second Child to maintain insurance up to "at least the minimum limits of coverage required by the financial responsibility laws of the state where the loss occurs" and represented that it would provide Second Child liability insurance only in excess to any other valid insurance, and Second Child agreed to indemnify Edge Auto against any liability arising from Second Child's use of the vehicle. While driving the truck, Second Child's employee, plaintiff Daniel Jaffe, sideswiped another car. The damaged vehicle's owner sued plaintiffs for the costs associated with the damage.FN3 Plaintiffs then filed this action against defendants seeking to recover the costs associated with the damage up to the statutory minimums provided in Vehicle and Traffic Law § 370. In response, defendants argued that under the Graves Amendment, they could not be vicariously liable for damages arising from an accident caused solely by plaintiffs' negligence.

As relevant to this appeal, plaintiffs moved for summary judgment seeking an order declaring that defendants were required pursuant to Vehicle and Traffic Law § 370 to provide insurance "on a primary and non-contributory basis." Supreme Court denied plaintiffs' motion. The court concluded that the Graves Amendment preempted section 370 and rejected plaintiffs' argument that section 370 is a financial responsibility law subject to the Graves Amendment's savings clause.

The Appellate Division affirmed, holding that "the Graves Amendment does not supersede Vehicle and Traffic Law § 370 insofar as it is a state law that requires rental car companies to carry a specified minimum amount of insurance for each of their vehicles" but "is superseded to the extent it requires a rental car company to 'provide primary insurance to their renters up to the minimum liability limits provided by the statute' " (236 AD3d 499, 501 [1st Dept 2025]). The Court reasoned that "[t]o hold otherwise would rescue [*3]every vicarious liability claim up to statutory minimum insurance amounts and render the Graves Amendment's preemption clause a nullity" (id. at 502). The Court further held that section 370 does not reverse preempt the Graves Amendment under the McCarran-Ferguson Act, because the Graves Amendment "does not entirely 'invalidate, impair, or supersede' " section 370 (id.). The Appellate Division then granted plaintiffs leave to appeal to this Court and certified the question of whether its order was properly made (see 2025 NY Slip Op 69533[U] [1st Dept 2025]).

III.

The Graves Amendment clearly preempts Vehicle and Traffic Law § 388, which explicitly imposes vicarious liability on rental car companies for accidents caused solely by their renters.FN4 The issue in this case is whether the primary liability insurance requirement imposed by Vehicle and Traffic Law § 370, as interpreted in Ward, is likewise preempted by the Graves Amendment. Plaintiffs agree that defendants are not vicariously liable for injuries caused by the rented vehicle, but argue that the Graves Amendment, by virtue of the savings clause, does not relieve defendants of their obligation to meet New York's insurance standards. Thus, our preemption analysis turns on whether section 370, interpreted as requiring primary liability coverage, falls within the Graves Amendment's savings clause.FN5

"[W]hen federal and state law conflict, federal law prevails and state law is preempted" (Sutton 58 Assoc. LLC v Pilevsky, 36 NY3d 297, 305 [2020] [internal quotation marks omitted]). We interpret federal statutes "according to [their] ordinary, contemporary, common meaning" (Southwest Airlines Co. v Saxon, 596 US 450, 455 [2022] [internal quotation marks omitted]). We assess plain meaning "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole" (Solomon v Flipps Media, Inc., 136 F4th 41, 51 [2d Cir 2025] [internal quotation marks omitted). It is a "cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute" (United States v Greenberg, 127 F4th 410, 413 [2d Cir 2025] [internal quotation marks omitted]). And "[w]here an examination of the statute as a whole demonstrates that a party's interpretation would lead to absurd or futile results plainly at variance with the policy of the legislation as a whole, that interpretation should be rejected" (Yerdon v Henry, 91 F3d 370, 376 [2d Cir 1996] [internal quotation marks and ellipsis omitted]).

The Graves Amendment's savings clause excepts state laws "imposing financial responsibility or insurance standards" on vehicle owners (49 USC § 30106 [b] [1]), but does not define "financial responsibility" or "insurance standards" (see id.). We agree with other jurisdictions' well settled precedent holding that, in this context "financial responsibility" refers to "state laws which require either liability insurance or a functionally equivalent financial arrangement" (Garcia v Vanguard Car Rental USA, Inc., 540 F3d 1242, 1247 [11th Cir 2008]; see Malco Enters. of Nev., Inc. v Woldeyohannes, 140 Nev —, —, 559 P3d 875, 879 [2024] [collecting cases discussing meaning of "financial responsibility" in the savings clause]; see also 7A Jordan R. Plitt et al., Couch on Insurance § 109:34 [3d ed, Dec. 2025 update] [collecting cases]).

An interpretation of section 370 as containing a primary liability insurance requirement FN6 does not fit within that definition. As Ward explains, section 370 works in tandem with section 388 to require car rental companies to insure against the vicarious liability that section 388 imposes for damages caused by a renter driving the company's vehicle, resulting in the primary insurance requirement (see 96 NY2d at 72-73). But, as discussed, section 388 is clearly preempted by the Graves Amendment, which expressly prohibits states from imposing such liability (see 49 USC § 30106 [a]). In view of this Court's interlocking interpretation, as section 388 falls, so too must section 370's primary insurance requirement. To conclude otherwise would be to require car rental companies to insure against liability that federal law commands they no longer face. This is precisely the type of absurd result, contrary to well-settled insurance law, that bedrock interpretive principles instruct us to avoid (see Yerdon, 91 F3d at 376; cf. Zeglen v Minkiewicz, 12 NY2d 497, 499 [1963] ["liability insurance protecting an automobile or its driver or owner does not change the nature or extent of the rights and liabilities of the parties"]).

Moreover, interpreting the Graves Amendment in its full context commands that we read the savings clause with an eye toward the Amendment's primary objective: eliminating vicarious liability for rental companies (cf. Solomon, 136 F4th at 51). Concluding that section 370, as interpreted by Ward, is protected by the savings clause would recognize that rental companies no longer face vicarious liability, but nonetheless require that these companies obtain insurance for such liability and defend and indemnify customers in lawsuits arising from their own negligence. Section 370's primary insurance requirement would, in effect, become a vicarious liability regime masquerading as a financial responsibility statute, in violation of federal law. This "workaround" to the Graves Amendment would undermine its core purpose. Thus, we hold that Vehicle and Traffic Law § 370 is preempted to the extent the statute requires such companies to provide primary liability insurance coverage to renters (see Ward, 96 NY2d at 78).

This decision aligns with other jurisdictions' interpretation of the Graves Amendment. Courts have deemed preempted state statutes that impose liability on car rental companies for their renters' negligence, regardless of that liability's form. For example, the Supreme Court of Minnesota held that the Graves Amendment preempted a Minnesota statute that, although at first appeared to impose an "insurance standard" falling under the Amendment's savings clause, actually functioned as a cap on car rental companies' vicarious liability (see Meyer v Nwokedi, 777 NW2d 218, 225-226 [Minn 2010]; accord Puerini v LaPierre, 208 A3d 1157, 1165 [RI 2019] [deeming a state statute that imposed vicarious liability on rental companies for renters' negligence preempted]; Vargas v Enterprise Leasing Co., 60 So 3d 1037, 1042-1043 [Fla 2011] [same for a Florida statute]; Garcia, 540 F3d at 1248-1249 [same]; Rodriguez v Testa, 296 Conn 1, 16-17, 993 A2d 955, 964 [2010] [deeming a state statute that imposed vicarious liability on rental companies unless they obtained minimum liability insurance coverage preempted]). Other courts have concluded that insurance-like statutes are not preempted because they fall within the Graves Amendment's savings clause, in part because the statutory scheme is not predicated on a primary coverage mandate (like New York's). For example, the Supreme Court of Nevada deemed not preempted a statute that required rental companies to provide secondary insurance coverage to their customers if the company "fails to provide the [renter with] separate short-term rental insurance or security," concluding that the statute was a financial responsibility [*4]law (Malco Enters. of Nev., 140 Nev at —, 559 P3d at 879-881; see also Puerini, 208 A3d at 1166 [deeming not preempted Connecticut statutes that imposed liability on rental companies that failed to meet minimum insurance obligations or rented a vehicle without first determining the renter's financial responsibility]). A consensus emerges from these cases: the Graves Amendment preempts state statutes which, in form or effect, purport to impose vicarious liability on car rental companies for damages caused solely by their customer's operation of a rented vehicle, but permits those imposing minimum insurance obligations.

We note that the Graves Amendment does not free car rental companies from all liability arising from the use of a rented vehicle. On the contrary, it expressly permits States to impose liability on rental companies for damages arising from their own negligence or criminal wrongdoing (see 49 USC § 30106 [a] [2]). Nor does the Graves Amendment restrict New York's ability to require rental companies to obtain insurance, no matter what kind, "for the privilege of registering and operating a motor vehicle" (id. § 30106 [b] [1]). Our decision today does not affect section 370's requirement that car rental companies obtain insurance coverage for such other liability or for the privilege of registering vehicles in New York. Rather, we narrowly hold that the Graves Amendment preempts Vehicle and Traffic Law § 370 to the extent that it requires car rental companies to provide primary liability insurance to their renters up to the statute's minimum liability amounts.

IV.

Because Vehicle and Traffic Law § 370 regulates insurance, our preemption analysis must clear an additional hurdle: the McCarran-Ferguson Act (see 15 USC § 1012). The McCarran-Ferguson Act constrains federal preemption of state laws regulating the insurance industry. It provides that federal legislation cannot invalidate, supersede, or impair a state law regulating insurance unless the federal legislation "specifically relates to the business of insurance" (id. § 1012 [b]). In other words, the federal preemption of a state insurance law is prohibited where "(1) the federal statute in question does not specifically relate to insurance; (2) the state law at issue was enacted to regulate the business of insurance; and (3) the federal statute at issue would invalidate, impair, or supersede the state law" (Matter of Monarch Consulting, Inc. v National Union Fire Ins. Co. of Pittsburgh, PA, 26 NY3d 659, 670 [2016]). Because section 370 and the Graves Amendment undisputedly satisfy the first two of these prongs, the McCarran-Ferguson Act's applicability rests on the third.

As the U.S. Supreme Court has recognized, a federal law is reverse preempted by virtue of the McCarran-Ferguson Act when the federal law (1) invalidates the state law, meaning "render[s the state law] ineffective;" (2) supersedes the state law, meaning "displace[s]" the state law; or (3) impairs the state law, meaning, the federal law "frustrate[s] a[ ] declared state policy or interfere[s] with a [s]tate's administrative regime" (Humana Inc. v Forsyth, 525 US 299, 307, 310 [1999]). Here, as already discussed, section 370 survives as a requirement that companies maintain minimum insurance obligations even after the Graves Amendment. Although precluding section 370's primary liability insurance requirement might be characterized as an "impairment," that impairment fundamentally relates to vicarious liability; any conflict pertaining to insurance only arises secondarily to the question of liability. Section 370's requirement that rental companies obtain an insurance policy, file a surety bond, or file a certificate of self-insurance remains in effect. Because the impairment here does not relate to the business of insurance, the McCarran-Ferguson Act is not offended, and the Graves Amendment is not reverse preempted.

V.

Given the foregoing, Vehicle and Traffic Law § 370's requirement that car rental companies provide primary insurance to their renters up to the statutory minimum liability limits did not survive the Graves Amendment. Supreme Court therefore properly denied plaintiffs' summary judgment motion, which, as relevant here, sought declaratory relief predicated only on such a requirement. Given the narrow scope of plaintiffs' motion and this appeal, we have no occasion to address whether section 370 can be read as requiring rental companies to provide secondary insurance coverage or other kinds of coverage apart from liability insurance, or whether such requirements would run afoul of the Graves Amendment.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

WILSON, Chief Judge (Dissenting):

This case turns on an issue of federal preemption doctrine, not New York law. When deciding whether an act of Congress overrides state law—especially in areas historically retained to state regulation—federal preemption doctrine rests on the proposition that "the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress" (Rice v Santa Fe El. Corp., 331 US 218, 230 [1947]). At issue here is the business of insurance, which is traditionally regulated by the states, not the federal government. Indeed, to ensure that

Congress does not interfere with state regulation of the business of insurance, Congress enacted the McCarran-Ferguson Act, an explicit command that statutes regulating the business of insurance be construed against preemption unless very specific conditions are met (15 USC § 1012 [b]).

In 2005, Congress enacted a law, known as the Graves Amendment, prohibiting states from imposing vicarious liability on car rental companies for the negligence of their drivers (49 USC § 30106 [a]). Congress's concern, as reflected throughout the legislative history of the Graves Amendment, was that certain states, including New York, imposed limitless liability on car rental companies for accidents caused by the negligence of renters. The New York statute imposing that liability—Vehicle and Traffic Law ("VTL") § 388—was one of the state statutes targeted by the Graves Amendment. On that point the majority and I agree.

But the Graves Amendment also explicitly carved out, in a savings clause, state laws imposing financial responsibility and insurance requirements on car rental companies (49 USC § 30106 [b]). New York also has such a law—VTL 370—which, by its terms, requires that car rental companies maintain minimum amounts of insurance. Even putting aside both federal preemption doctrine and the McCarran-Ferguson Act, the Graves Amendment's savings clause makes clear Congress did not intend to preempt laws such as VTL 370. But when we apply, as we must, the doubled hurdle of federal preemption doctrine and the McCarran-Ferguson Act, there is simply no basis to conclude that Congress preempted VTL 370. Faithful application of longstanding federal preemption doctrine—largely ignored by the majority—makes abundantly clear why VTL 370 is not preempted by the Graves Amendment.

[*5]I.

Because this case is about federal preemption, we must begin there. "Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect" (Arizona v United States, 567 US 387, 398-399 [2012]). Under the Supremacy Clause, "Congress has the power to preempt state law" (id., citing US Const art VI, cl 2). However, "[i]t is never assumed lightly that Congress has derogated state regulation, but instead courts have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law" (Balbuena v IDR Realty LLC, 6 NY3d 338, 356 [2006] [internal quotation marks and brackets omitted]; see also Egelhoff v Egelhoff ex rel. Breiner, 532 US 141, 160 [2001, Breyer, J. dissenting] ["the Court has recognized the practical importance of . . . applying pre-emption analysis with care . . . in order to determine how best to reconcile a federal statute's language and purpose with federalism's need to preserve state autonomy"]). Congress can supersede state legislation in three ways: express preemption, field preemption or conflict preemption (New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co., 514 US 645, 654 [1995]; Balbuena v IDR Realty LLC, 6 NY3d 338, 356 [2006]). Neither the majority nor Edge Auto explains which strain of federal preemption doctrine results in the Graves Amendment's preemption of VTL 370.

The broadest form of federal preemption doctrine is field preemption, which occurs when federal law occupies a "field" of regulation "so comprehensively that it has left no room for supplementary state legislation" (Murphy v National Coll. Athletic Assn, 584 US 453, 479 [2018], quoting R.J. Reynolds Tobacco Co. v Durham County, 479 US 130, 140 [1986]). There is no claim here that the Graves Amendment entirely displaced states from regulating the business of insurance, so field preemption is not at issue.

With express preemption, "Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision" (Arizona v United States, 567 US 387, 399 [2012]). To discern whether Congress's purpose was to preempt a state law, we "focus on the plain wording of the clause" (CSX Trans., Inc v Easterwood, 507 US 658, 664 [1993]). When faced with ambiguity, we interpret with the "presumption against the pre-emption of state police power regulations" (Cipollone v Liggett Group, Inc., 505 US 504, 508 [1992 plurality]). The Graves Amendment contains an express preemption clause but, as explained in more detail below, that clause addresses only vicarious liability and does not preempt any part of state insurance law.

Finally, conflict preemption, which comes in the two flavors of "impossibility" or "obstacle" preemption, occurs where "compliance with both state and federal law is impossible" or where "the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' " (Oneok, Inc. v Learjet, Inc., 575 US 373, 377 [2015], quoting California v ARC America Corp., 490 US 93, 100, 101 [1989]). As explained below, the question here is one of conflict preemption. Regardless of the kind of preemption, the "ultimate touchstone" of our inquiry is Congress's purpose (Medtronic, Inc v Lohr, 518 US 470, 485 [1996]).

"The preemption of state laws represents a serious intrusion into state sovereignty" (Virginia Uranium, Inc. v Warren, 587 US 761, 773 [2019] [plurality op] [internal quotation marks omitted]; see also Raygor v Regents of Univ. of Minnesota, 534 US 533, 544 [2002] ["States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere"]). Accordingly, courts do not evaluate preemption issues in a vacuum, and context can supply further protection against preemption. "In all pre-emption cases," absent some "clear and manifest" expression of Congress's purpose, we "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act" (Wyeth v Levine, 555 US 555, 565 [2009] [citation and quotation marks omitted]). When Congress is acting "in a field which the States have traditionally occupied," that presumption applies with "particular[]" strength (id.). Such is the case here, as historically, states have "enjoyed a virtually exclusive domain over the insurance industry" (St. Paul Fire & Mar. Ins. Co. v Barry, 438 US 531, 538-539 [1978]).

Moreover, under the McCarran-Ferguson Act, all courts, including ours, operate under an affirmative [*6]congressional command that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance []" (15 USC § 1012 [b]). The Act protects a state law from preemption when: (1) the federal statute in question does not specifically relate to insurance; (2) the state law at issue was enacted to regulate the business of insurance; and (3) the federal statute at issue would invalidate, impair, or supersede the state law (see Humana Inc. v Forsyth, 525 US 299, 307 [1999]). The McCarran-Ferguson Act is sometimes referred to as so strong a federal policy as to be thought of as "reverse preemption" of federal law by state insurance law (see e.g. Matter of Monarch Consulting, Inc. v National Union Fire Ins. Co. of Pittsburgh, PA, 26 NY3d 659, 671 [2016]; Humana Inc, 525 US at 307; U.S. Dept. of Treasury v Fabe, 508 US 491, 505 [1993]). However, the phrase "reverse preemption" does not imply a distinct analytical step performed only after ordinary preemption analysis has been performed. Instead, the Act grants special status to state insurance laws in the context of federal preemption doctrine: against the backdrop of a well-developed body of caselaw that has set up certain presumptions against preemption depending on the context, the Act presents a further federal command to construe federal statutes even more restrictively against preemption in the context of the business of insurance. The "primary objective" of the Act was restoring to the states (following a contrary Supreme Court opinion) the "broad regulatory authority over the business of insurance" they had historically possessed (Fabe, 508 US at 505).

II.

Express preemption requires us to begin with the plain text of the purported preemption provision (Easterwood, 507 US at 664). As the Graves Amendment provides:

"An owner of a motor vehicle that rents or leases the vehicle to a person . . . shall not be liable under the law of any State . . . , by reason of being the owner of the vehicle . . . , for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of rental or lease, if -- (1) the owner . . . is engaged in the trade or business of renting or leasing motor vehicles; and (2) there is no negligence or criminal wrongdoing on the part of the owner" (49 USC § 30106 [a]).

It is undisputed that this provision preempts state statutes imposing vicarious liability on car rental companies, such as VTL 388. But the plain language of that provision says nothing whatsoever about insurance. That it changes the amount of exposure a car rental company might face, and therefore the cost of insurance, cannot be sufficient to invoke express preemption. If it were, then any federal law that altered the cost of doing business would be sufficient to invoke express preemption.

Nothing in the Graves Amendment prohibits States from requiring car rental companies to carry liability insurance, which is what the plain text of VTL 370 mandates:

"Every person, firm, association or corporation engaged in the business of carrying or transporting passengers for hire in any motor vehicle or motorcycle, except street cars, and motor vehicles or motorcycles owned and operated by a municipality, and except as otherwise provided in this section, which shall be operated over, upon or along any public street or highway of the state of New York shall file with the commissioner of motor vehicles for each motor vehicle or motorcycle intended to be so operated evidence, in such form as the commissioner may prescribe, of a corporate surety bond or a policy of insurance" (VTL 370).

"Any such bond or policy of insurance shall also contain a provision that such bond or policy of insurance shall inure to the benefit of any person legally [*7]operating the motor vehicle or motorcycle in the business of the owner and with his permission, in the same manner and under the same conditions and to the same extent as to the owner" (VTL 370).

Under routine ordinary-meaning analysis, nothing in the Graves Amendment's clause limiting the liability of car rental companies mentions anything about the kinds of insurance requirements imposed by VTL 370, or even the word insurance, for that matter.

As if to dispel any doubts, Congress added a savings clause to clarify what the Graves Amendment did not do. Far from supporting a claim of express preemption, the savings clause embodies an affirmative command of non-preemption. The savings clause provides:

"Nothing in this section supersedes the law of any State . . . -- (1) imposing financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle; or (2) imposing liability on business entities engaged in the trade or business of renting or leasing a motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law" (49 USC § 30106 [b]).

That savings clause squarely applies to statutes like VTL 370, which (as no one disputes) imposes a minimum insurance requirement, or in the words of the savings clause, an "insurance standard[]." Even using the majority's definition, if we take "financial responsibility" laws to mean "state laws which require either liability insurance or a functionally equivalent financial arrangement" (majority op at 8, quoting Garcia v Vanguard Car Rental USA, Inc., 540 F3d 1242, 1247 [11th Cir 2008]), VTL 370 is just that kind of statute. It provides, without equivocation, that rental car companies must obtain liability insurance as a condition of doing business in New York State (accord 7A Couch on Insurance § 109:34 [noting that financial responsibility laws "require automobile coverage for all permissive operators against loss for liability"]). Thus, under the ordinary meaning of the plain terms of the Graves Amendment and VTL 370, the Graves Amendment does not expressly preempt VTL 370.

III.

That leaves only conflict preemption. Although the majority does not identify the strain of preemption doctrine on which it relies, its holding uses the language of effect, offering at least the implication that its core concern may be conflict preemption (see majority op at 10 [expressing concern that VLT 370 would "in effect, become a vicarious liability regime masquerading as a financial responsibility statute"]).

Conflict preemption, a form of implied preemption, requires courts to exercise special restraint: "Implied preemption analysis does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives; such an endeavor would undercut the principle that it is Congress rather than the courts that pre-empts state law" (Chamber of Commerce of U.S. v Whiting, 563 US 582, 607, [2011 plurality] [internal quotation marks and citation omitted]). Conflict preemption occurs, as noted above, where "compliance with both state and federal law is impossible," or where "the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' " (Oneok, 575 US at 377 [citation omitted]). That is a high bar. The Supreme Court has been clear that "a high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act" (Whiting, 563 US at 607 [internal quotation marks and citation omitted]). That difficult hurdle is made even more formidable by the McCarran-Ferguson Act, which applies to preemption in all its forms. With conflict preemption in particular, in order to give effect to the Act's mandate to construe against preemption, only the strictest form of conflict preemption—impossibility preemption—would suffice to establish Congress's intent to preempt.

Neither form of conflict preemption applies here. Both New York's Vehicle and Traffic Law and the legislative history of the Graves Amendment show why. When the automobile was new, the common law provided that owners of cars—back then a luxury good perceived to be very dangerous—would not be liable for the negligence of the chauffeurs who most frequently were the ones behind the wheel (see Psota v Long Is. R. Co., 246 NY 388, 394 [1927]). In 1924, the legislature enacted an earlier version of VTL 388 to override the common law rule (see Plath v Justus, 28 NY2d 16, 20 [1971] [VTL 388 was enacted "for the purpose of fixing liability on an owner of a motor vehicle for the negligent operation of his car by another with his consent"]). By its terms, VTL 388 provides:

"Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner" (VTL 388).

Subparagraph (4) of VTL 388 specifically requires vicarious liability insurance for owners: "All bonds executed by or policies of insurance issued to the owner of any vehicle subject to the provisions of this section shall contain a provision for indemnity or security against the liability and responsibility provided in this section"—meaning, liability of the owner for negligence of the driver. Along with VTL 388, the Legislature enacted a host of related provisions, including VTL 312, which requires all New York vehicles to carry insurance.FN1

VTL 370, on the other hand, is different. It does not mention negligence; it provides that insurance must cover "judgment or judgments for damages" (VTL 370 [1])), without regard to any specific cause of action. The insurance required by VTL 370 does not depend on a theory of vicarious liability, but rather arises from ownership of an automobile rented in New York for use on our roads. The theory of liability is [*8]not vicarious—it is simply a requirement of doing business as a car rental company in New York. For example, if a rental driver gets into an accident at no fault of her own, VTL 370 would still impose liability on the rental company if it failed to obtain insurance coverage up to the statutory minimum.

With the Graves Amendment, Congress had a specific target in mind: unlimited vicarious liability. As the majority observes, Congress wanted to preempt "unlimited vicarious liability schemes" that imposed liability on rental companies for their renters' "negligence" (majority op at 4). These laws, the majority reminds us, cost consumers hundreds of millions and claimed the livelihoods of many small businesses (id.). The legislative history does contain statements by certain of New York's Representatives who

feared that the Graves Amendment might permit "rental car companies to lease vehicles to uninsured drivers with no recourse for innocent victims should an accident occur" (151 Cong. Rec. 4096, 4096-4097 [2005] [statement of Rep. Jerry Nadler]). Yet the Senate sponsor (and Amendment's namesake) addressed those concerns, explaining that rental cars, "before they can even be registered, have to meet the State's minimum requirements for insurance. That is up to the States" (id. at 4099 [statement of Sen. Samuel Graves]).

Thus, it is quite clear, from the language of the savings clause, from the language and history of VTL 370, and from the legislative history of the Graves Amendment, that VTL 370 was not Congress's target in passing the Graves Amendment. Indeed, the savings clause shows just the opposite: Congress intended to preserve state laws like VTL 370. Because, as the majority acknowledges, Congress' target was "unlimited vicarious liability schemes," VTL 370 would not be a proper target, because the liability it imposes is capped at the statutory minimums FN2. An insurance requirement for rental car companies capped at $25,000 for bodily injury and $10,000 for property damage is worlds apart from unlimited vicarious liability. Preemption of VTL 370 is neither necessary nor sufficient to achieve Congress's aim of eliminating vicarious liability; preemption of VTL 388 as to car rental companies achieves that aim on its own.

Accordingly, compliance with both federal and state law is clearly possible here, precluding application of impossibility preemption—which is a "demanding defense" (Wyeth, 555 US at 573). As noted above, even if VTL 370 imposed a primary, non-contributory insurance requirement, doing so up to a statutory minimum is, as a practical matter, drastically different from imposing the full brunt of vicarious liability, which is unlimited. VTL 388's preemption ensures the accomplishment of the Graves Amendment's purpose of eliminating such unlimited vicarious liability, and the continued operation of VTL 370, which the majority recognizes largely "survives" even under its view of preemption (majority op at 13), is clearly "possible."

Nor does VTL 370 pose an obstacle to accomplishment of the Graves Amendment. Obstacle preemption occurs when, "under the circumstances of [a] particular case, [state] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (Hines v Davidowitz, 312 US 52, 67 [1941]). As we have held, "the conflict between state law and federal policy must be a sharp one and federal law does not preempt state law under obstacle preemption analysis unless the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together" (Sutton 58 Assoc. LLC v Pilevsky, 36 NY3d 297, 309 [2020] [internal quotation marks and citation omitted]). Even in areas of law where federal law overwhelmingly controls (such as immigration) states still retain power to enact state legislation in that arena, especially when that legislation falls squarely within the coverage of a federal savings clause (see e.g. Whiting, 563 US at 603).

Obstacle preemption cannot be established here for the simple reason that VTL 370 does not pose an obstacle to the aims Congress enacted in the Graves Amendment. The majority claims that application of [*9]VTL 370 would "undermine [the] core purpose" of the Graves Amendment, the purpose of which the majority characterizes (correctly) as eliminating unlimited vicarious liability for the negligence of the drivers of rental cars (majority op at 10). But to reiterate, the insurance required by VTL 370 is limited to the statutory minimums. Capping the amount of insurance coverage at those statutory minimums, such that car rental companies cannot be exposed to unlimited vicarious liability, does not present a "repugnance or conflict [] so direct and positive that the two acts cannot be reconciled or consistently stand together" (Sutton, 36 NY3d at 309 [internal quotation marks and citation omitted]). Further, there are many instances—such as in the example of the rental car driver who gets into a no-fault accident FN3—where VTL 370 imposes liability on the rental car company unrelated to the negligence of the driver. The majority suggests the savings clause does not apply here on the basis that only a statute imposing secondary liability, not primary liability, would qualify as a financial responsibility law, as some other states have apparently concluded (majority op at 11 [citations omitted])FN4. Yet it is unclear why this would be the case. If the operative concern of Congress is the unlimited extent of vicarious liability, there is no functional difference between primary and secondary insurance requirements, insofar as each simply imposes statutory minimums.

Finally, ELRAC, Inc. v Ward (96 NY2d 58, 78 [2001]), discussed at length by the majority, is not germane to preemption, nor does it support the majority's rewriting of the statute to distinguish between primary and secondary liability. In ELRAC, we held that rental car companies could not contractually shift the VTL 370 liability onto renters, because the VTL 370 liability was primary and noncontributory to the vicarious liability imposed by VTL 388. Determining that the legislature intended that rental companies bear [*10]the responsibility to secure primary, noncontributory insurance covering the statutory minimum as a condition of operating a rental car business in New York does not create a conflict with the Graves Amendment's exemption directed at barring the unlimited vicarious liability of car rental companies. Essentially, the majority's interpretation depends on the proposition that the legislature would not have enacted VTL 370 unless it could have imposed vicarious liability on car rental companies via VTL 388. But VTL 388 standing alone would have imposed vicarious liability on car rental companies as the owners of the rented vehicles; for that reason, VTL 370 must have been enacted to serve a different purpose. Whereas the majority construes VTL 370 as entirely dependent on VTL 388 (and therefore somehow related to preemption), the opposite is true: VTL 370 imposes a different and independent obligation for minimum coverage as a condition of rental companies doing business in New York. That VTL 370 and 388 are codified in different statutes and serve different ends (supra, at 10-11) further militates against the majority's holding. Indeed, the implication of the majority's opinion is that all the Legislature must do to overcome its holding is to reenact VTL 370 without any reference to VTL 388, making clear that it is not based on a theory of vicarious liability, but rather an insurance requirement required to do business in New York. Moreover, the interpretation proposed by Edge Auto and adopted by the majority—that ELRAC supports preemption of VTL 370 insofar as imposes primary but not secondary liability—finds no support in the Graves Amendment or preemption doctrine, further eroding its soundness. As the majority appears to acknowledge (majority op at 13), we have not been confronted here with the argument that, in light of VTL 388's partial preemption as to boundless vicarious liability for car rental companies, VTL 370 now requires something other than primary and noncontributory liability. All we have before us is the text of VTL 370, the Graves Amendment, and the facts of this case; based on that, it is not possible to conclude that Congress expressly preempted VTL 370.

***

In bypassing well-established principles of federal preemption meant to safeguard the balance of power between Congress and the states, the majority works a result that will increase costs and could leave many New Yorkers without a remedy in the case of an accident involving a rental vehicle. If all that VTL 370 now requires is that car rental companies obtain insurance for their own negligent acts, there will be no statutory backstop to prevent rental car companies from either renting to uninsured drivers or requiring each driver to obtain her own insurance policy as a condition of using a rental vehicle. In either case, it is New York consumers who will bear the financial burden of personal insurance policies and increased premiums across the board. Nothing in the Graves Amendment requires the costly result imposed today by the majority, which Congress, by including the savings provision, expressly sought to avoid.

Order affirmed, with costs, and certified question answered in the affirmative. Opinion by Judge Singas. Judges Rivera, Garcia and Cannataro concur. Chief Judge Wilson dissents in an opinion, in which Judges Troutman and Halligan concur.

Decided April 23, 2026

Footnotes

Footnote 1

Specifically, section 370 requires that rental companies file a "corporate surety bond or a policy of insurance" with the Commissioner of Motor Vehicles (Vehicle and Traffic Law § 370 [1]); if the company owns more than 25 vehicles, the company may instead certify that it has the financial ability to respond to judgments against it arising out of the company's ownership of the vehicles via a certificate of self-insurance (see id. § 370 [1] [a]; [3]).

Footnote 2

Section 388 is in derogation of the common-law rule, which provided that the owner of a vehicle is liable for injuries caused by that vehicle only if it was driven personally by the owner or the owner's agent (see Ward, 96 NY2d at 73).

Footnote 3

The owner of the damaged car is not involved in this appeal.

Footnote 4

The parties agree that section 388 is preempted by the Graves Amendment.

Footnote 5

Therefore, we need not grapple with implied preemption principles, as the dissent suggests (see dissenting op at 4-5, 9-17).

Footnote 6

The requirement of primary coverage up to the statutory minimum is not explicit in section 370's text (see generally Vehicle and Traffic Law § 370), but is a requirement of that statute given our interpretation in Ward (see 96 NY2d at 72-73, 78). In essence, this Court read the primary coverage requirement into section 370. No party asks us to overturn Ward, and we adhere to our prior interpretation of section 370 (see Palladino v CNY Centro, Inc., 23 NY3d 140, 151 [2014], quoting People v Hobson, 39 NY2d 479, 489 [1976] ["Precedents involving statutory interpretation are entitled to great stability" under stare decisis framework (internal quotation marks omitted)]). Although federal law provides the preemption framework, interpretation of state statutes is this Court's domain.

Footnote 1

VTL 312 (1) (a) provides: "1. (a) No motor vehicle shall be registered in this state unless the application for such registration is accompanied by proof of financial security which shall be evidenced by proof of insurance or evidence of a financial security bond, a financial security deposit or qualification as a self-insurer under section three hundred sixteen[.]" That statute also requires the car owner to maintain such proof "continuously throughout the registration period" (VTL 312 [1] [b]).

Footnote 2

For vehicles with fewer than seven passengers, the minimum insurance requirements are $25,000 for bodily injury, $50,000 for death and $10,000 for property damage (VTL 370 [1]), [3]). The amounts have remained unchanged for over 30 years (see L 1995, ch 305, §§ 10, 11).

Footnote 3

Virtually every accident involves no-fault insurance, as every automobile insurance policy must provide no-fault benefits regardless of who caused the collision. Many proceed with only no-fault insurance, particular when only minor damage or injuries are sustained.

Footnote 4

The majority's reliance on decisions of other State courts about the preemption of their state statutes is misplaced (majority at 10-11). Most of those opinions concerned state laws

that straightforwardly imposed vicarious liability or joint and several liability on rental car companies, much like VTL 388 (see e.g., Meyer v Nwokedi, 777 NW2d 218, 225-226 [Minn 2010]; Puerini v LaPierre, 208 A3d 1157, 1165 [RI 2019]; Vargas v Enterprise Leasing Co., 60 So 3d 1037, 1042 [Fla 2011]; Garcia, 540 F3d at 1248-1249; Rodriguez v Testa, 993 A2d 955, 964 [Conn 2010]). No one disputes that such liability is not what the terms of VTL 370 impose. Moreover, in some of those cases, the state laws were deemed preempted by the Graves Amendment not because they imposed any primary insurance requirement, but because they induced rather than required insurance coverage, which meant they did not fall within Garcia's definition of "financial responsibility laws" and thus were not covered by the savings clause (Meyer, 777 NY2d at 225; Rodriguez, 993 AD2d at 964). The insurance requirement in VTL 370 is an unequivocally mandatory "shall." The other cases cited by the majority support the opposite point reached by the majority. In Malco Enterprises of Nevada (559 P3d 875, 880-881 [Nev 2024]), the Nevada Supreme Court confronted a statute that "impos[ed] a legal requirement that lessors independently cover lessee liability up to the minimum amount" [emphasis omitted]). The Nevada Supreme Court considered the secondary nature of this coverage important to ensure the statute did not, in effect, become a vicarious liability law (id. at 881). This is, in effect, the position taken by Edge Auto, which reassures us that its view would not lead to any glaring gaps in liability because "Section 370 would still require insurers to provide secondary insurance to drivers who do not have their own insurance with the statutory minimum liability insurance." But that distinction does not stand up to the slightest scrutiny. Under that view, it is somehow vicarious liability to require an insurance company to primarily insure an insured driver, but it is not vicarious liability to require the same company to pay for the liability incurred by an uninsured driver who gets into an accident. The operative variable is whether the driver is insured, but that is not a basis on which to classify what is (or is not) vicarious liability. Nor can such a classification be found anywhere in New York's statutory scheme or the Graves Amendment.